ETTA B. ROSS *vs.* JAMES W. ROSS, JR.

Middlesex.   October 12, 1973. — August 8, 1974.

Present: HALE, C.J., GRANT, & ARMSTRONG, JJ.

*Trust,* Resulting trust.   *Gift.   Husband and Wife,* Bank account,
   Gift.   *Joint Tenants.   Personal Property,* Joint tenants.   *Contract,*
   Consideration.

Evidence merely that a wife directed bank stock purchased solely
   from her own assets to be issued in her and her husband's names
   jointly so as to take advantage of a dividend tax exclusion was
   insufficient to rebut the presumption that she intended him to
   have a beneficial interest in the stock, and it was the joint proper-
   ty of the parties.   [508-509]
With respect to a home conveyed to a husband and wife as tenants
   by the entirety, the mere fact that the wife furnished from her
   own funds all of the purchase price "over and above the amount
   of the mortgage" did not warrant a finding that she paid the
   entire purchase price, and he did not hold his joint interest in the
   home on a resulting trust for her.   [509-510]
In the absence of evidence of an understanding or agreement between
   a husband and wife as to ownership of art works and household
   furnishings paid for from their joint account, the property was
   regarded as purchased with the parties' jointly owned money and
   as held in joint tenancy, notwithstanding assertions by the wife
   that the joint account was her own money and that her husband's
   deposits therein were insufficient to pay household expenses.   [510-
   511]
With respect to a corporation founded by a husband and others, his
   purchase of its stock, issued in his name, partly with cash drawn
   from a joint account with his wife which was jointly owned did
   not warrant a conclusion that he held the stock on a resulting trust
   for her benefit.   [512]
A husband's oral promise to his wife that corporate stock, when ac-
   quired, would belong to her, did not create a trust, and his free-
   dom to pay for the stock from a joint account with her negated
   any consideration for a binding contract.   [512-513]

A trust was created by a husband's oral promise to hold in trust for his wife shares of corporate stock not yet acquired or issued but eventually issued in his name only and paid for by the wife's pledge of a savings bank passbook standing in her own name. [513]

Where the judge's findings in a suit in equity would not have supported a decree that a husband had a beneficial interest in real estate purchased by his wife with her own money, omission from the final decree of a determination of the ownership of the parcel did not prejudice the husband-appellant. [513-514]

PETITION IN EQUITY filed in the Probate Court for the county of Middlesex on August 3, 1971.

The case was heard by *Sullivan, J.*

*Robert R. Clark* for the defendant.

*Morris Michelson* for the plaintiff.

*Robert W. Hagopian,* for Orion Research Inc., amicus curiae, submitted a brief.

ARMSTRONG, J.   By this suit in equity the plaintiff seeks to establish her sole ownership of certain shares of corporate stock held in the name of the defendant, her "former husband,"[1] of certain shares of stock and real property held in their names jointly, and of certain household furnishings and art objects in their home. In his counterclaim the defendant seeks a determination that certain real property in Lafayette, California, held in the plaintiff's name, is their joint property. The defendant has appealed from a final decree by which the plaintiff was determined to be sole owner of all the properties, with minor exceptions. The judge made a report of material facts. The evidence is reported in full.

"The appeal brings before this court questions of fact as well as of law. It is the duty of the court in these circumstances to examine the evidence and to decide the

---

[1] The report of material facts, entered more than a year after trial, so described the defendant. The pleadings indicate only that the defendant secured a decree of divorce in Nevada, that the validity of said decree is the subject of a bill for declaratory relief brought by the plaintiff and that the defendant brought a libel for divorce in the court below which was dismissed.

case according to its judgment; but the decision of the trial judge upon questions of fact based upon oral testimony heard by him will not be reversed unless it is plainly wrong. *Lindsey* v. *Bird,* 193 Mass. 200, 201 [1906]". *Hogan* v. *Hogan,* 286 Mass. 524, 525 (1934). *Krasner* v. *Krasner,* 362 Mass. 186, 187-188 (1972). *Albano* v. *Jordan Marsh Co., ante,* 304, 305 (1974). "From the evidence we can find facts not expressly found by the judge. If convinced that he was plainly wrong we can find facts contrary to his findings." *Lowell Bar Assn.* v. *Loeb,* 315 Mass. 176, 178 (1943), and cases cited. *Younker* v. *Pacelli,* 354 Mass. 738, 739 (1968). *Turner* v. *Guy, ante,* 343, 344 (1974). *Figueiredo* v. *Silvia, ante,* 350, 351 (1974).

We summarize the facts as found by the judge and by us. The parties were married in 1950 in California where the defendant was attending college and receiving a stipend under the G. I. Bill. The plaintiff was receiving rental income from some real estate, and was holding a part-time clerical job. The job terminated in 1951, when the parties had a daughter, their only child. After graduating the defendant worked for a time as a chemist for an oil company. While in California the plaintiff bought a parcel of land for $1,000 which the judge found to be her own money. That land, record title to which is in the plaintiff (defendant so states in his answer; there is no evidence on the subject), is in dispute in this case. In 1954 the couple moved to Madison, Wisconsin, where the defendant was a graduate student and was earning only fellowship or assistantship income. The plaintiff became a real estate broker and earned money from commissions and from capital gains on the resale of real estate she purchased. When they left Madison in 1957 to come to Boston, they had $14,000, which the judge found to be the sole property of the plaintiff.

At an undisclosed time the defendant became an assistant professor at the Massachusetts Institute of Technology (M.I.T), an employment he left in mid-1962 to become

vice president and director of research for Orion Research, Inc. (Orion), a company founded in August, 1962, by the defendant and three other persons. One of these persons held 1500 shares; the defendant and the others held 500 shares each. The defendant paid $500 for his shares, by a check drawn on the parties' joint checking account. The judge made no finding whether the $500 was the entire consideration for the shares issued. On the uncontradicted evidence by the president and treasurer of Orion, respectively, we find that the $500 was nominal consideration only, and that the principal consideration was Orion's desire to retain the services and technical expertise of the defendant. In 1964 the defendant was given the opportunity to purchase another 500 shares, for a nominal $500, and did so, again drawing the check on the joint account. In 1966 the defendant purchased shares for a nominal price of ten cents apiece — this time 1333⅓ shares. These shares were issued at a time when Orion was arranging financing to develop manufacturing capacity, and the issue was apparently subject to a contingent liability for an additional payment if Orion failed to achieve a certain level of profitability over the ensuing five years. The contingency did not arise. In 1967 one of the original founders resigned: his 500 shares were purchased back by Orion and were resold to the other founders. The defendant purchased 127 of those shares on March 30, 1967, for a price of either $4,152.90 ($32.70 per share) or $4,762.50 ($37.50 per share) by a check drawn on the joint account. The funds thus drawn had been deposited for that purpose by the plaintiff, who obtained the funds by pledging a savings bank passbook issued in her name alone. On the same day, March 30, 1967, the defendant purchased 169⅓ shares from Orion for a nominal price of ten cents per share, or $16.93. Later in 1967 — the year Orion shares were first sold publicly — approximately 500 shares were purchased by the parties and were issued in the name of the defendant as custodian for their

daughter. These last shares, which cost in excess of $18,000, are not in dispute. All other shares purchased — originally totaling 2629⅔ shares but now totaling 68,716 shares due to stock splits — although issued in the name of the defendant individually, are claimed by the plaintiff as her sole property.

The defendant was salaried during the employments discussed. His annual salary at M.I.T. was between $9,000 and $10,000. He started with Orion in 1962 at $12,000 per year, by 1964 was paid $15,000 per year, and by 1967, $18,000 per year.

After coming to Boston the plaintiff continued her activities in real estate investment and realized substantial gains, notwithstanding limited capital, by purchasing properties with heavy mortgage financing and then selling them at a profit. In 1961 she owned in her own name a six-apartment house on Bowdoin Street in Cambridge from which she received gross rental income of $11,000 per year and which she operated at a profit. She sold the property that year for $50,000, for a profit of $15,000. Between 1961 and 1964 she owned in her own name a three-apartment building at 7 Chauncy Street in Cambridge, which she operated at a profit, and which she sold in 1964, along with 9 Chauncy Street, for $185,000. Her gain on the sale was $100,000. Her rental income, gains from the sale of real estate, and income and gains from the purchase and sale of stock were all deposited in the parties' joint checking account. The parties during this period also held in their joint names the house they then lived in at 140 Dudley Road, Newton, which was sold in 1965 for $50,000, a profit of $15,000. In 1964 they purchased their present family house, 61 Gatehouse Road, Newton, for $52,500. They mortgaged the house for slightly more than half of its purchase price. Their own payment consisted of two cashier's checks purchased with funds from the joint checking account, which the judge found to be "her sole property." The judge also found, "The title to the house

was put in their names as tenants by the entirety just for convenience. I find that there was no intent to make a gift of the property to him or to give him any interest in the property. It was just done for convenience with the understanding that in reality it was to be her sole property."

During this period the parties purchased various works of art and household furnishings, title to which is here in dispute, and as to the value of which there was sharply conflicting testimony. Little purpose would be served by reciting the testimony concerning the many purchases. The items were all paid for by checks drawn on the joint account, usually written by the plaintiff, sometimes in the defendant's presence. Sometimes the purchases (according to the judge's finding) were accompanied by bills of sale made out to the plaintiff. The judge found that, with the exception of two primitive wood carvings, which the plaintiff testified she bought as gifts for the defendant, all the art works and household furnishings were paid for by the plaintiff from her sole funds, that title to them was taken in her name, and that she had no intention of giving any beneficial interest therein to the defendant.

The last item in dispute is 124 shares of Cambridge Trust Company (bank) common stock, held in the parties' names jointly. The shares were purchased by the plaintiff directly from the bank, out of the proceeds of the sale of other shares of stock. The latter shares were purchased subsequent to 1957 with funds from the parties' joint account but were registered in the plaintiff's name alone. The judge found that the plaintiff furnished the entire consideration for the purchase of the bank shares, that "she put the stock in the joint names for convenience only, after discussing with the bank the advantages of doing this, mainly the income tax deduction," and that "the . . . [defendant's] name was used on the shares of stock as a joint tenant merely for convenience and that no gift was intended to him."

### THE SHARES OF BANK STOCK.

The general rule is well settled that where one provides the entire purchase price for property but causes title to be transferred to another, a presumption arises that the latter holds the property on a resulting trust for the one who provided the entire purchase price. This rule is subject to the exception that where a husband or wife (as to the wife, see *English* v. *English,* 229 Mass. 11, 12 [1917], *Hogan* v. *Hogan,* 286 Mass. 524, 526 [1934], and *Tenczar* v. *Tenczar,* 332 Mass. 105, 106-107 [1954]; contra, Scott, Trusts [3d ed.] § 442, pp. 3336, 3337; Restatement 2d: Trusts, § 442, comment a, p. 403) provides the entire purchase price and causes title to be put in the spouse's name, a contrary presumption arises, namely, that a gift to the spouse is intended. Either presumption is rebuttable by a showing on clear evidence that the actual intent was different from that which would otherwise be presumed. *Frank* v. *Frank,* 335 Mass. 130, 135 (1956), and cases cited. *Krasner* v. *Krasner,* 362 Mass. 186, 189 (1972). The same principles apply to property paid for solely by one spouse but transferred to the spouses jointly. *McPherson* v. *McPherson,* 337 Mass. 611, 613-614 (1958).

There was evidence to support the judge's finding that the plaintiff paid for the 124 shares of bank stock solely from her own assets. The evidence does not, however, support his finding that the plaintiff intended no beneficial interest to pass to the defendant. The basis for the judge's finding can only be the plaintiff's testimony to the effect that she was indifferent whether the shares were issued to her alone or to her and the defendant as joint tenants, and that her decision to have them issued jointly was based on advice by an official of the bank that she could thereby take advantage of each spouse's $100 Federal income tax dividend exclusion. See 26 C. F. R. § 1.116-1(b). This evidence is insufficient to rebut the presumption that she intended the defendant to have a beneficial interest in the shares. To the contrary, as this

evidence might tend to show an intention that he receive income from the shares, it supports rather than derogates from the presumption. See *English* v. *English,* 229 Mass. 11, 12 (1917), and *Goldman* v. *Finkel,* 341 Mass. 492, 493-494 (1960). There is no evidence of an agreement or understanding between the parties with respect to the shares as in *Blanchette* v. *Blanchette,* 362 Mass. 518, 520-522 (1972). As the burden was on the plaintiff to overcome the presumption (*DePasqua* v. *Bergstedt,* 355 Mass. 734, 736 [1969]), it was error to rule that the shares were her sole property. Rather, they are the joint property of the parties. The precise nature of the joint interests we cannot determine on the record before us. The certificates are not in evidence, nor is there other evidence bearing on the form of ownership as shown in the bank's records. As there is no evidence to the contrary, the wife has not sustained her burden of showing that the formal indicia of ownership are not to be taken at face value. *Blanchette* v. *Blanchette, supra,* at 523-524.

### THE PROPERTY AT 61 GATEHOUSE ROAD.

The judge's finding that the plaintiff paid the entire purchase price for the house and lot at 61 Gatehouse Road, Newton, has its basis in the plaintiff's testimony that she purchased the cashier's checks from her own funds and with them furnished all of the funds for the purchase of the property "over and above the amount of the mortgage." Absent contrary evidence, we must infer that as the title was taken jointly the defendant, as well as the plaintiff, signed the note secured by the mortgage at the time of the purchase. *Goldman* v. *Finkel,* 341 Mass. 492, 493-494 (1960). There is no evidence that the defendant's participation was a loan of credit. See *Murphy* v. *McKenzie,* 1 Mass. App. Ct. 553, 555-556 (1973). Therefore, the plaintiff did not furnish the entire purchase price (*McPherson* v. *McPherson,* 337 Mass. 611, 614 [1958], and cases cited), and the judge's finding

to the contrary is plainly wrong. It follows that the
defendant does not hold his joint interest on a resulting
trust for the plaintiff. Assuming there is support in the
testimony for the judge's finding of an "understanding
that in reality it [61 Gatehouse Road] was to be her sole
property," which might be taken to suggest the existence
of an express trust, we note the absence of any finding or
evidence of a written instrument of trust. G. L. c. 203,
§ 1. *Chace* v. *Gardner*, 228 Mass. 533, 535 (1917).

The final decree is erroneous as applied to 61
Gatehouse Road. That property is held by the parties as
tenants by the entirety, or, if they are now divorced (a
matter left unclear on the record before us[2]), as tenants
in common. *Bernatavicius* v. *Bernatavicius*, 259 Mass.
486, 490 (1927).

THE ART WORKS AND HOUSEHOLD FURNISHINGS.

There is as to the several items in this category no
finding or evidence of any agreement or understanding
between the parties as to their ownership. The judge's
"finding" that title was taken in the plaintiff's name is a
ruling of law, apparently based on his finding that the
several items "were purchased by the . . . [plaintiff] with
her own money." As each item was purchased, on the
plaintiff's own admission, by a check drawn on the joint
account, the finding that the purchase money was the
plaintiff's sole property appears to rest on another finding
to the effect that the joint account was the plaintiff's sole
property. Although a "finding as to the respective
interests of the parties in joint deposits during their lives
is a pure question of fact" (*Blanchette* v. *Blanchette*, 362
Mass. 518, 521 [1972]), such a finding, like any other,
must be supported by the evidence. The judge's finding
as to the ownership of the joint account in this case is not
based upon evidence of any agreement or understanding
between the parties. Rather, the evidentiary basis
appears to be the repeated assertions by the plaintiff that

[2] See fn. 1.

the joint account was her own property. In the circumstances of this case we regard those assertions as a legal opinion or conclusion, and not as evidence having probative value.

Alternatively, the evidentiary basis may have been the plaintiff's testimony that the defendant "was supposed to have paid for the household expenses," that his paychecks, which she admitted were at least sometimes deposited in the joint account, were insufficient to pay for the household expenses, and that therefore the only money available in the joint account to pay for the art objects and household furnishings was the money she deposited. Assuming all this to be true, it does not follow that the art objects and furnishings were purchased with her sole money. She had the burden of proving that her contributions to the joint account were not a gift for the benefit of both spouses. *D'Amico* v. *D'Amico*, 1 Mass. App. Ct. 561, 563 (1973), and cases cited. As there was no evidence sufficient to sustain that burden, it follows that the art objects and furnishings must be regarded as having been purchased with the parties' jointly owned money.

In the absence of evidence to show an understanding or agreement of the parties as to ownership of the art objects and furnishings, or evidence bearing on their intention at the time of acquisition, we are of the opinion that household furnishings, used as such in the family home, when purchased after marriage with the parties' joint moneys, or proceeds of the sale of such property, must be presumed to belong to the parties as joint tenants. There is evidence to the contrary as to the two primitive wood carvings. The plaintiff testified that she purchased them as gifts for the defendant and that he accepted them as such. There was no evidence to rebut the presumption of joint ownership with respect to the other items of art works and household furnishings. As to them the final decree is in error.

.

THE ORION SHARES.

There were five separate acquisitions of Orion shares in the name of the defendant individually. As to four of those acquisitions — 500 shares in 1962, 500 shares in 1964, 1333⅓ shares in 1966, and 169⅓ shares in March, 1967 — our findings that the purchase price was only nominal consideration and that the greater part of the consideration was furnished by the defendant in services and expertise, and in addition our ruling that the joint account from which the nominal cash consideration was paid was joint property, both preclude the possibility that the defendant holds these shares on resulting trust for the benefit of the plaintiff. *Charest* v. *St. Onge*, 332 Mass. 628, 631 (1955). *McPherson* v. *McPherson*, 337 Mass. 611, 614 (1958). *Goldman* v. *Finkel*, 341 Mass. 492, 494 (1960). If we were to assume that the nominal cash payments were her sole property, "where one pays but a part of the purchase price and seeks to enforce a resulting trust in his favor, it must be shown that the payment made by him was for some specific part or distinct interest in the estate." *Druker* v. *Druker*, 308 Mass. 229, 230 (1941). No such showing was made here.

As to three of the acquisitions — 500 shares in 1962, 500 shares in 1964, and 127 shares on March 30, 1967 — we find evidence (scant, perhaps, but enough so that we cannot say the judge was plainly wrong[3]) to support the judge's findings of agreements between the parties that the shares, when acquired, would belong to her. Although the findings suggest the creation of several express trusts, the shares of stock which were to constitute the res of each trust had not been acquired or issued at the time of the agreement or declaration of trust pertaining thereto. Trusts were therefore not created at the

---

[3] The clearest evidence related to the 127 shares purchased in March, 1967, concerning which the plaintiff testified that the defendant said to her, "Sweetheart, please mumsy, they must stay in my name, so I have leverage. But these will always be there for you, mumsy, you know that. I have no reason to have them for myself."

time of the several declarations. Scott, Trusts (3d ed.) § 75. *Bennett* v. *Littlefield*, 177 Mass. 294, 300 (1901). The judge's findings establish at best oral promises by the defendant to create trusts when the shares at issue were acquired. These were not binding as contracts unless supported by consideration. Scott, Trusts (3d ed.) § 86, p. 712.

We find no such consideration in connection with the acquisitions of the 500 shares in 1962[4] and the 500 shares in 1964. As the plaintiff admitted, the defendant was free to draw on the account without permission; and we have already concluded he could do so as matter of right.

There was consideration to bind a promise to hold in trust the 127 shares acquired on March 30, 1967. The judge found that the plaintiff provided the purchase price for those shares by pledging a savings bank passbook standing in her own name. As to those 127 shares, and such additional shares as have been derived from them, we find no error in the judge's determination that they are the sole property of the plaintiff. We hold that the other 2502⅔ shares, and such additional shares as have been derived from them, are the sole property of the defendant.

THE PARCEL OF LAND IN LAFAYETTE, CALIFORNIA.

The judge found that the plaintiff purchased the parcel of land in Lafayette, California, with her own money. Apart from the admission in the defendant's answer that the parcel "stand[s] in her name," there is no other evidence from which the circumstances of the acquisition of the property may be inferred. See Cal. Civil Code, § 5110. The burden was on the defendant to introduce evidence to establish his claim that she holds the property in trust for the joint benefit of both parties. The defend-

---

[4] It should also be noted that it was not until the effective date of St. 1963, c. 765, that contracts between husband and wife became generally enforceable.

ant's testimony, in conflict with that of the plaintiff, was that the parcel was paid for from a joint account in which the earnings of both parties had been deposited. The judge was not required to, and did not, believe the defendant's testimony. The judge's findings could not have supported a decree to the effect that the defendant had a beneficial interest in the property. Assuming that there was error in the judge's omission to include a determination as to ownership of the parcel in his final decree, the omission would not prejudice the defendant, and the plaintiff did not appeal. *D'Amico* v. *D'Amico,* 1 Mass. App. Ct. 561, 563, n. 1 (1973).

The final decree is reversed. A new final decree is to enter in conformity with this opinion.

*So ordered.*