LEVIN H. CAMPBELL, Circuit Judge.
 

 In August of 1965, John and Marie Hause, husband and wife, bought a house in North Weymouth, Massachusetts. They paid the purchase price, $17,500, in part with a loan secured by a mortgage and in part with the proceeds of the sale of their previous house in Quincy. The Hauses held title to the North Weymouth property as tenants by the entirety until November 12, 1976, when John conveyed his interest exclusively to Marie. The deed recited that Marie paid a nominal consideration for the conveyance of John’s interest, but in fact no money changed hands.
 

 Whitlock, exercising his powers as trustee in bankruptcy of John’s estate,
 
 [1]
 
 brought this suit in the United States Bankruptcy Court for the District of Massachusetts to set aside the transfer as a fraudulent conveyance. Mass.Gen.Laws ch. 109A (1958). The Hauses defended on the ground that Marie’s contribution to the purchase of the Quincy house and her undercompensated services as a bookkeeper in John’s business as a self-employed floor installer constituted antecedent debts that supplied consideration for the conveyance. The bankruptcy court denied the Hauses’ request for a jury trial on this issue, In re Hause, 10 B.R. 628, 629 (Bkrtcy.D.Mass.1981), and, in the bench trial that followed, declared that the transfer was fraudulent.
 
 In re Hause,
 
 13 B.R. 75, 79-80 (Bkrtcy.D.Mass.1981). The district court affirmed. On appeal, the Haus-es challenge both the denial of a jury trial and the bankruptcy court’s conclusion that there was no antecedent debt to support the conveyance.
 

 I.
 

 In arguing that the bankruptcy court improperly denied their demand for a jury trial, the Hauses point to section 1480(a), the statute governing the right to trial by jury under the Bankruptcy Reform Act of 1978, 11 U.S.C. §§ 101
 
 et seq.;
 
 28 U.S.C. §§ 1471
 
 et seq.
 
 Section 1480(a) provides,
 

 Except as provided in subsection (b) of this section, this chapter and title 11 do not affect any right to trial by jury, in a case under title 11 or in a proceeding arising under title 11 or arising in or related to a case under title 11, that is provided by any statute in effect on September 30, 1979.
 

 28 U.S.C. § 1480(a). The Hauses contend that this section preserves the right as it existed on the last effective date of the Bankruptcy Act of 1898 (1898 Act). Under the 1898 Act creditors pursued remedies in different forums depending on whether their action was “summary” or “plenary.” Summary actions were those involving property actually or constructively in the possession of the bankruptcy court. In these, the 1898 Act provided no right to trial by jury except in a few specially delineated cases. Plenary actions, however, were non-bankruptcy civil suits brought in either a state court of general jurisdiction or a federal district court. In these, the laws of the particular plenary forum governed the parties’ right to trial by jury. Characterizing the instant proceeding as plenary, the Hauses base their asserted
 
 *863
 
 right to a jury trial on the proposition that in a hypothetical suit brought under the 1898 Act either in the federal district court or in the Massachusetts court, they would have been entitled to such a trial.
 
 [2]
 

 Whether the Hauses’ understanding of the requirements of section 1480(a) is correct in this regard we need not decide. We are satisfied, in any event, that neither the United States nor the Massachusetts constitutions would provide a right to trial by jury in a case of this character. It follows that even were we to adopt the Hauses’ suggested mode of analysis, they would not prevail. We now discuss our reasons for so concluding, turning first to the issue of whether a jury trial would have been required in a plenary action brought in a federal district court.
 

 A.
 

 The seventh amendment — which governs the right to jury trials in federal courts,
 
 Simler v. Conner,
 
 372 U.S. 221, 222, 83 S.Ct. 609, 610-611, 9 L.Ed.2d 691 (1963) — preserves the right “[i]n suits at common law.” U.S. Const, amend. VII. At one time courts analyzed the right in historical terms: if at the time of the adoption of the seventh amendment the common law courts had jurisdiction to decide the case and to provide adequate relief, the parties had a right to trial by jury.
 
 See generally
 
 5
 
 Moore’s Federal Practice
 
 ¶ 38.08[5.4], at 38-48 (2d ed. 1982). Since the merger of law and equity, Fed.R.Civ.P. 2, the Supreme Court has moved away from a rigidly historical focus in a line of cases that includes
 
 Dairy Queen, Inc. v. Wood,
 
 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), and
 
 Ross v. Bernhard,
 
 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970). The Hauses argue that these recent cases support their contention that they were entitled to a jury trial on Whitlock’s fraudulent conveyance claim.
 

 In so arguing, the Hauses apparently recognize that the lower federal courts have uniformly denied jury trial as of right in such proceedings.
 
 See Senchal v. Carroll,
 
 394 F.2d 797, 799 (10th Cir.1968);
 
 Johnson v. Gardner,
 
 179 F.2d 114,117 (9th Cir.1949);
 
 Williams v. Collier,
 
 32 F.Supp. 321, 325 (E.D.Pa.1940). They contend nonetheless that these decisions are predicated upon a view of the seventh amendment which has not survived the Supreme Court’s latest pronouncements. Although this argument contains a kernel of plausibility, it does not withstand close scrutiny.
 

 Historically, courts of equity had no jurisdiction unless legal remedies were inadequate.
 
 See, e.g., Schoenthal v. Irving Trust Co.,
 
 287 U.S. 92, 95, 53 S.Ct. 50, 51, 77 L.Ed. 185 (1932) (jury trial ordered in trustee’s suit to recover preference; traditional legal remedy of trover adequate). Once the inadequacy of legal remedies was established, however, courts of equity had jurisdiction to provide complete relief between the parties. This “clean-up” jurisdiction permitted courts of equity to award money damages where such an award was incidental to the equitable relief that supplied jurisdiction initially. In cases of this character, a jury trial was not required.
 
 See, e.g., Williams v. Collier,
 
 32 F.Supp. 321, 324 (E.D.Pa.1940)
 
 *864
 
 (no right to jury trial in trustee’s fraudulent conveyance suit seeking injunction, accounting, and damages; legal remedy inadequate).
 

 In
 
 Dairy Queen, Inc. v. Wood,
 
 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), however, the Supreme Court refused to extend this “clean-up” concept to claims of a classically legal nature that were joined with equitable claims in a single action pursuant to the merger of law and equity. In
 
 Dairy Queen,
 
 the plaintiff — alleging a breach of the terms of a trademark licensing arrangement — sued for an accounting and an injunction barring future infringements. The district court regarded the suit as predominantly equitable and denied the defendant’s demand for a jury trial on the issue of damages. The Third Circuit affirmed. The Supreme Court reversed, finding that the request for an accounting, which the plaintiff and the lower courts had characterized as equitable, was in truth a contract claim of a legal character that carried with it a right to trial by jury. 369 U.S. at 479, 82 S.Ct. at 900.
 

 The central concern in
 
 Dairy Queen
 
 was to prevent the merger of law and equity under the new procedural rules from eroding the seventh amendment guaranty. To illustrate the impact of the merger, the Court, speaking through Justice Black, referred to Fed.R.Civ.P. 18(b) which permits a plaintiff to “ ‘state a claim for money and a claim to have set aside a conveyance fraudulent as to him, without first having obtained a judgment establishing the claim for money.’ ”
 
 Dairy Queen,
 
 369 U.S. at 471, 82 S.Ct. at 896 (quoting Fed.R.Civ.P. 18(b)). This rule, as the Court pointed out, reverses an earlier decision which held that a plaintiff in federal court must first obtain a judgment at law before proceeding in equity to set aside a fraudulent conveyance.
 
 Id.
 
 A plaintiff, therefore, could bring a single civil action both to establish the defendant’s liability on a contract (legal) and to upset the defendant’s transfer of property to a third party (equitable). It was the clear message of
 
 Dairy Queen
 
 that the consolidation permitted by Rule 18(b) could not be allowed to destroy a party’s right to trial by jury on the legal claim.
 
 Id.
 
 at 471-72, 82 S.Ct. at 896-897. Thus when a plaintiff combines in a single proceeding both a legal claim for damages and an equitable request that the court set aside a fraudulent conveyance, the seventh amendment preserves the parties’ right to trial by jury on the underlying legal claim.
 

 The instant case, however, does not involve the joining of a legal claim for damages with an equitable claim for relief from a fraudulent conveyance. Rather Whitlock is asserting a power to avoid fraudulent conveyances that was directly conferred by the Bankruptcy Act. 11 U.S.C. § 544(b). If there was an “underlying” claim at all, it arose from the debtor’s adjudication as a bankrupt — a proceeding that courts have invariably characterized as equitable.
 
 [3]
 
 Thus, the
 
 Dairy Queen
 
 Court’s concern that seventh amendment rights will be eroded is not present here; the trustee’s avoidance powers do not further some underlying legal claim, but rather are ancillary to a determination which was itself equitable, not legal, in character. The only issues for decision in the trustee’s fraudulent convey-
 
 *865
 
 anee avoidance action are factual issues concerning the availability of this equitable form of relief. Nothing in
 
 Dairy Queen
 
 requires a jury trial on factual issues surrounding the availability of equitable relief. To the contrary,
 
 Dairy Queen
 
 implies that a fraudulent conveyance claim, stripped of any underlying legal claim, would be properly tried to the court. 369 U.S. at 471, 82 S.Ct. at 896.
 
 See also Mission Bay Camp-land, Inc. v. Summer Financial Corp.,
 
 72 F.R.D. 464, 467-68 (D.Fla.1976) (no right to trial by jury in action to set aside fraudulent conveyance where judgment-creditor’s underlying legal claim had previously been tried to jury; remainder of action equitable).
 

 An analysis similar to this underlay the Tenth Circuit’s conclusion that there was no right to trial by jury in a trustee’s action to set aside a fraudulent conveyance. After surveying the relevant cases including
 
 Dairy Queen,
 
 the court in
 
 Senchal v. Carroll,
 
 394 F.2d 797, 798-99 (10th Cir.1968), concluded that an action seeking to revest property in the bankrupt’s estate is “basically an equitable one calling for relief which only equity can afford.”
 

 Nothing in
 
 Ross v. Bernhard,
 
 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970), a case decided after
 
 Senchal,
 
 points toward a different result. There, the Court confronted a shareholder’s derivative suit to recover excessive brokerage commissions. Historically, derivative suits could not have been brought at law. Nonetheless, the Court ruled that after the issue of shareholder “standing” was resolved in a non-jury proceeding, the seventh amendment entitled the parties to a jury trial on the corporation’s underlying claim to recover the commissions, a claim the Court characterized, at least in part, as undoubtedly legal.
 
 Ross,
 
 396 U.S. at 542, 90 S.Ct. at 740. In contrast, a trustee’s fraudulent conveyance claim, presents no legal issue.
 

 The Hauses contend that because Whit-lock included in his prayer for relief a request for damages,
 
 Dairy Queen
 
 and
 
 Ross
 
 compel a jury trial here. They admit that except insofar as it seeks money damages, the prayer requests equitable relief. Regarding the damages claim as predominant, however, they argue that Whitlock’s equitable characterization of his claim should not defeat their right to trial by jury.
 

 Whitlock’s prayer asked for three forms of relief. First, it asked the court to declare the conveyance void and to set it aside — an indisputably equitable claim. Second, it asked the court to order Marie to reconvey the property to John and Marie as tenants by the entirety — again an equitable claim — or
 
 alternatively
 
 to order John and Marie to pay damages to the estate equivalent to John’s interest in the property. This damages request was intended to take effect only if the earlier requested equitable relief of reconveyance was unavailable. If, for example, Marie conveyed to a bona fide purchaser, the court could not practically order her to reconvey the property, though perhaps it could award damages. The damages, in any case, were to make up for the court’s inability to grant underlying relief of an exclusively equitable nature. Third, Whitlock prayed for such other relief as the court deemed just and equitable. This “catchall” request — common to virtually all equity cases — did not modify the equitable character of the proceeding. Indeed, the other just and equitable relief would itself most likely be equitable; for example, if Marie conveyed to a bona fide purchaser, the court might impose a constructive trust on the proceeds of the sale.
 

 We believe that Whitlock’s claim for damages stands on an altogether different footing from the request for an accounting in
 
 Dairy Queen.
 
 There, the lower court had chosen to characterize as equitable an ambiguous complaint demanding damages for a breach of contract. This construction resulted in the denial of a jury trial on an issue traditionally legal in nature. Here we confront only a claim to upset a fraudulent conveyance; no issue of a traditionally legal nature is before us. Proceeding from the assumption in
 
 Dairy Queen
 
 that a suit to set aside a fraudulent conveyance without more triggers no right to trial by jury, we find nothing to support the conclusion that
 
 *866
 
 the mere addition of a claim in the alternative for money damages changes the result. It is true that the
 
 Dairy Queen
 
 Court rejected the view “that the right to trial by jury may be lost as to legal issues where those issues are characterized as ‘incidental’ to equitable issues.” 369 U.S. at 470, 82 S.Ct. at 896. But, in context, the Court was referring to claims to which the right of jury trial has historically adhered — not to mere alternate prayers for relief arising within a wholly equitable framework.
 
 Cf. Crane Co. v. American Standard, Inc.,
 
 490 F.2d 332, 342 (2d Cir.1973) (suit for injunc-tive relief that began wholly in equity not transformed into one partially at law by later events that made monetary relief appropriate).
 

 In sum we conclude that if Whitlock had brought his claim in a hypothetical plenary proceeding in a federal forum under the 1898 Act, the Hauses would have had no right to trial by jury.
 

 B.
 

 We next ask whether there would have been a right to trial by jury under Massachusetts law. Article 15 of the Massachusetts constitution provides that “[i]n all controversies concerning property, and in all suits between two or more persons, except in cases in which it has heretofore been otherways used and practiced, the parties shall have right to trial by jury.” Mass. Const, art. 15.
 
 [4]
 
 The Supreme Judicial Court, interpreting this provision to preserve the right as it existed at the time of the adoption of the constitution, has concluded that a defendant’s right to trial by jury in Massachusetts depends on the nature of the plaintiff’s claim.
 
 Parker v. Simpson,
 
 180 Mass. 334, 344, 62 N.E. 401, 409 (1902). If the subject matter of the cause of action is equitable, the defendant has no right to trial by jury.
 
 Commissioner of Banks v. Harrigan,
 
 291 Mass. 353, 355, 197 N.E. 92, 94 (1935). On the other hand, if the plaintiff’s claim is essentially legal, the defendant may demand a jury trial as of right.
 
 Powers v. Raymond,
 
 137 Mass. 483, 486 (1884).
 

 The Hauses argue that Whitlock’s claim — like that in
 
 Powers, supra
 
 —involves an essentially legal cause of action to which a claim for equitable relief has been appended. A careful examination, however, reveals that
 
 Powers
 
 and the other cases the Hauses cite are distinguishable from the instant case. In
 
 Powers
 
 the plaintiff alleged that the defendant had failed to pay for goods delivered pursuant to a contract. Because the defendant had been rendered insolvent through a conveyance of certain property to a third party, the plaintiff brought a bill in equity to avoid the conveyance and collect on the contractual claim. The trial court denied the defendant’s demand for a jury trial on the issue of his contractual indebtedness. The Supreme Judicial Court reversed, reasoning that although the form of remedy was equitable, the underlying claim was essentially legal.
 
 See also Stockbridge v. Mixer,
 
 215 Mass. 415, 418, 102 N.E. 646, 647-48 (1913) (defendant had right to trial by jury where the plaintiff brought suit in equity to “reach and apply” certain assets to satisfy an obligation arising from the performance of personal services);
 
 Merchants’ National Bank v. Moulton,
 
 143 Mass. 543, 545, 10 N.E. 251, 252 (1887) (defendant had right to trial by jury where the plaintiff brought equitable action to set aside allegedly fraudulent compromise and to apply assets to a legal obligation). Thus, the Supreme Judicial Court was concerned that procedural innovations would limit the right to trial by jury on traditionally legal claims, a concern identical to that expressed in
 
 Dairy Queen.
 

 As our earlier discussion reveals, however, Whitlock’s claim arises from the trustee’s avoidance powers conferred by statute. Massachusetts has traditionally treat
 
 *867
 
 ed such an avoidance proceeding as equitable.
 
 See Kempton v. Saunders,
 
 130 Mass. 236, 238 (1881). Where the underlying claim is equitable, the
 
 Powers
 
 concern is inapplicable. Thus, we conclude that in Massachusetts, as in federal court, the underlying claim is equitable and cannot serve as the basis for the Hauses’ asserted right to trial by jury.
 
 [5]
 

 The Hauses argue additionally that the remedial phase of the proceeding necessarily subsumes a number of issues of the sort traditionally tried to the jury. For example, an action brought pursuant to Mass. Gen.Laws ch. 109A raises questions of fraud, misrepresentation, and consideration. The Hauses contend that juries routinely resolve issues such as these in tort and contract actions. We know of no case, however, where a Massachusetts court has found that a defendant has a constitutional right to a jury trial on issues central to the determination of the propriety of equitable relief; certainly the Hauses have not cited one. Indeed, what little Massachusetts authority we have discovered suggests that the Hauses “are not entitled to a jury trial respecting the other branches of the case which relate to remedy and which are purely equitable in their nature.”
 
 Stockbridge v. Mixer,
 
 215 Mass, at 418, 102 N.E. at 648.
 
 Powers
 
 and its progeny are simply irrelevant where the underlying claim is equitable.
 

 To be sure, the Supreme Judicial Court has recognized that with respect to a claim that is equitable both as to subject matter and as to remedy, the lower court may, in its discretion, frame issues for the jury.
 
 See City of Boston v. Santosuosso,
 
 307 Mass. 302, 323, 30 N.E.2d 278, 292 (1940);
 
 Parker v. Simpson,
 
 180 Mass. 334, 344, 62 N.E. 401, 409 (1902). However, the right is discretionary with the trial court, and we see no abuse of discretion whatever in the bankruptcy court’s refusal to order a jury trial in this instance.
 
 See City of Boston,
 
 307 Mass, at 323-24, 30 N.E.2d at 293.
 

 We are satisfied, therefore, that under principles of Massachusetts as well as federal law, the Hauses’ demand for a jury trial was properly denied.
 

 II.
 

 Besides objecting to the lack of a jury trial, the Hauses challenge the correctness on the merits of the bankruptcy court’s decision. The court determined that Whit-lock could avoid the conveyance under section 4 of the Massachusetts fraudulent conveyance act (the Act). Section 4 provides that “[ejvery conveyance made ... by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made without a fair consideration.” Mass.Gen.Laws ch. 109A, § 4.
 

 On appeal the Hauses dispute a single issue: whether the bankruptcy court properly concluded that the conveyance was made without a fair consideration.
 
 [6]
 
 Section 3 of the Act, the Hauses point out, provides that fair consideration is given for property “when an antecedent debt is satisfied.” Mass.Gen.Laws ch. 109A, § 3. The word “debt” as used in the Act “includes any legal liability, whether matured or unma-tured, liquidated or unliquidated, absolute, fixed or contingent.” Mass.Gen.Laws ch. 109A, § 1. Drawing on these statutory provisions, the Hauses urge that two antecedent debts owed Marie by John supplied consideration for the conveyance.
 

 
 *868
 
 The first asserted source of John’s antecedent indebtedness arises, the Hauses claim, from Marie’s undercompensated services as a bookkeeper in John’s business. The bankruptcy court rejected this argument on the ground that the Hauses failed to prove John’s debt constituted a “legal” liability. Mass.Gen.Laws ch. 109A, § 1. The court’s conclusion rested on the fact that Marie was not classified as an employee of the business and on the absence of evidence to support a determination of the value of her services. In short, while Marie may have been paid less than she would have earned elsewhere, a question we do not consider, the court found nothing to support the claim that John was legally obligated to make up any difference. We agree.
 

 Second, the Hauses argue that Marie’s contribution to the purchase price of the North Weymouth house imposed on John a resulting trust in her favor. The Hauses paid the purchase price for the house, $17,-500, in part with the proceeds of a loan secured by a mortgage signed by both John and Marie ($11,000) and in part with the proceeds of the sale of the Quincy house ($6,500). Marie paid the entire purchase price for the Quincy house ($3,000) out of her own funds; John contributed nothing.
 
 [7]
 
 Because Marie purchased the Quincy house with her own funds, the Hauses reason, she was the beneficial owner of the house. When the Quincy house was sold to purchase the North Weymouth house, it follows, according to the Hauses, that Marie “owned” the proceeds of the sale ($6,500). Marie used these proceeds to make the downpayment on the North Weymouth house, the only equity invested at the time of purchase. Thus, the Hauses conclude, Marie owned the North Weymouth house, and John held his interest as tenant by the entirety upon a resulting trust in her favor.
 

 The Hauses could only succeed on such a theory, however, by introducing evidence sufficient to rebut the ordinary presumption that Marie intended her contribution as a gift to John. In Massachusetts, courts presume that a spouse who purchases property and takes title in the names of both spouses jointly has made a gift to the other spouse of one-half the interest in the property.
 
 See Osborne v. Osborne,
 
 - Mass. -, -, 1981 Mass.Adv.Sh. 2216, 2227, 428 N.E.2d 810, 818 (1981). This presumption applies whether the person who pays the purchase price is husband or wife.
 
 See
 
 id.-Mass, at-& n. 10, at 2227-28 & n. 10, 428 N.E.2d at 818 & n. 10;
 
 Boss v. Ross,
 
 2 Mass.App. 502, 508, 314 N.E.2d 888, 894 (1974),
 
 cert. denied,
 
 420 U.S. 947, 95 S.Ct. 1329, 43 L.Ed.2d 425,
 
 reh’g denied,
 
 421 U.S. 1017, 95 S.Ct. 2426, 44 L.Ed.2d 686 (1975). In the absence of evidence to the contrary, these presumptions compel the common sense conclusion that a spouse who takes title to property jointly owns it jointly, not in resulting trust for the other.
 
 See also
 
 Restatement (Second) of Trusts § 441, comment e (establishing presumption of gift when title is taken jointly).
 

 In the instant case the Hauses have failed to rebut this presumption; indeed, the evidence adduced at trial strengthens it. Both before and after the contested conveyance, the loan installments, maintenance costs, and property taxes were paid out of funds John earned as a floor installer. John testified that these payments reduced the initial $11,000 loan to an indebtedness of $3,000 to $4,000. Thus, even assuming that Marie contributed the $6,500 downpayment — an assumption subject to serious doubt considering that title to the Quincy house was also held jointly and the presumptions outlined above would apparently apply — it cannot be said that she owned the North Wey-
 
 *869
 
 mouth house. Rather the facts and presumptions both point toward the conclusion that the bankruptcy court reached: John and Marie treated the house as a shared enterprise; therefore, John held no resulting trust in Marie’s favor.
 

 The Hauses argue, however, that the bankruptcy court, in determining that no resulting trust could have been enforced on these facts, undertook an unduly technical analysis. They quote language to the effect that once “the trust has been executed, ... it is not necessary to inquire whether it might have been enforced at the suit of the wife.”
 
 Hutchins v. Mead,
 
 220 Mass. 348, 349, 108 N.E. 67, 68 (1915). The very next sentence of the opinion, however, provides that “[t]he relation between a husband and wife is such that transactions between them should be scrutinized with the greatest care to determine whether they are made in good faith, upon a sufficient consideration, and in satisfaction of a genuine trust.”
 
 Id.
 
 Whatever the
 
 Hutchins
 
 court intended in the language the Hauses cite, therefore, it clearly did not intend to direct courts to ignore the absence of a legally enforceable trust merely because a conveyance has taken place purportedly to satisfy the obligation.
 

 Finally, we note as did the bankruptcy court that Marie’s contribution to the purchase of the North Weymouth house is fully protected by her status as a tenant by the entirety with John. The rules governing the sale of property jointly owned by the debtor and a third party expressly provide that the trustee “shall distribute to the debtor’s spouse ... the proceeds of such sale ... according to the interest of such spouse.” 11 U.S.C. § 363(j).
 

 We hold, therefore, that the bankruptcy court properly ordered the transfer of the North Weymouth property set aside as a fraudulent conveyance. Having already determined that the Hauses’ demand for trial by jury was properly denied, we uphold the district court’s affirmance of the bankruptcy court’s judgment.
 

 Affirmed.
 

 [1]
 

 . The Bankruptcy Reform Act of 1978 empowers Whitlock as trustee to “avoid any transfer of an interest of the debtor in property .. . that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title.” 11 U.S.C. § 544(b).
 

 [2]
 

 . Several lower courts relying on Congress’s expressed intention to abolish the summary-plenary distinction as regards the jurisdiction of bankruptcy courts, have looked solely to the seventh amendment to determine the scope of the right to jury trial under section 1480(a). See
 
 In re Checkmate Stero & Elees., Ltd.,
 
 21 B.R. 402, 408 (D.C.E.D.N.Y.1982);
 
 In re Carne-ro,
 
 21 B.R. 132, 133 (Bkrtcy.D.Mass.1982);
 
 Matter of Graham,
 
 16 B.R. 606, 610 (Bkrtcy.N. D.Ga.1981);
 
 In re Otis,
 
 13 B.R. 279, 281 (Bkrtcy.N.D.Ga.1981);
 
 In re First Fin. Group of Texas,
 
 11 B.R. 67, 69 (Bkrtcy.S.D.Tex.1981);
 
 In re Fleming,
 
 8 B.R. 746 (Bkrtcy.N.D.Ga.1981);
 
 In re Frank Meador Buick, Inc.,
 
 8 B.R. 450, 455 (Bkrtcy.W.D.Va.1981).
 

 Other courts have analyzed jury demands asserted under section 1480 in terms of the summary-plenary distinction. See
 
 In re Professional Air Traffic Controllers Org.,
 
 22 B.R. 212, 213 (Bkrtcy.D.D.C.1982);
 
 In re D.H. Overmyer Telecasting Co.,
 
 18 B.R. 107, 108 (Bkrtcy.N.D.Ohio 1982);
 
 In re Portage Assocs., Inc.,
 
 16 B.R. 445, 447-48 (Bkrtcy.N.D.Ohio 1982);
 
 In re Mozer,
 
 10 B.R. 1002, 1004-05 (Bkrtcy.D.Colo.1981).
 
 See generally
 
 1
 
 Collier on Bankruptcy
 
 ¶ 301(4)(c)(i) (15th ed. 1980); Levy,
 
 The Right to Trial by Jury Under the Bankruptcy Reform Act of 1978,
 
 12 U.Conn.L.Rev. 1 (1979).
 

 [3]
 

 .
 
 See Matter of Merrill,
 
 594 F.2d 1064, 1067 (5th Cir.1979) (no right to trial by jury in bankruptcy proceedings except where Congress so provides) (citing
 
 Katchen v. Landy,
 
 382 U.S. 323, 336-40, 86 S.Ct. 467, 476-478, 15 L.Ed.2d 391 (1966));
 
 In re Trans-Pacific Corp.,
 
 76 F.Supp. 623 (S.D.Cal.1947) (no right to jury trial in bankruptcy except as Congress provides),
 
 aff’d,
 
 166 F.2d 1021 (9th Cir.),
 
 cert. denied,
 
 335 U.S. 815, 69 S.Ct. 32, 93 L.Ed. 370 (1948). In
 
 Katchen v. Landy,
 
 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), the Court rejected the claim that the bankruptcy court’s summary (non-jury trial) adjudication of an alleged preference violated the seventh amendment. The Court had no occasion to characterize the nature of proceedings adjudicating the debtor as a bankrupt as this was not before it. Nonetheless, the Court’s opinion recognizes that Congress may accommodate the right to trial by jury to the need for expeditious proceedings.
 
 Katchen,
 
 382 U.S. at 336-40, 86 S.Ct. at 476-478.
 
 Cf. In re N-500L Cases,
 
 691 F.2d 15 at 19-20 (1st Cir.1982) (wide disagreement among courts as to whether in a court action a claim for contributions from defendants is characterized as legal or equitable).
 

 [4]
 

 . Effective July 1, 1974 the Supreme Judicial Court adopted in large part the Federal Rules of Civil Procedure. Rule 38, governing the right to trial by jury, preserves the right as declared by article 15 of the Massachusetts constitution. Mass.R.Civ.P. Rule 38, Mass. Gen.Laws Ann. (West 1958). The Reporters’ Notes make clear that, except as to matters not relevant here, the right to trial by jury was unaffected by the adoption of the Rules.
 

 [5]
 

 . Recent decisions construing the Massachusetts fraudulent conveyance act arise as challenges to the trial court’s findings of facts.
 
 See American Discount Corp. v. Leventhal,
 
 357 Mass. 776, 258 N.E.2d 741 (1970);
 
 Casson v. Petrellis,
 
 345 Mass. 275, 186 N.E.2d 813 (1962); Virta
 
 v. Mackey,
 
 343 Mass. 286, 178 N.E.2d 571 (1962);
 
 Massachusetts Elec. Co. v. Pacifíc Nat’l Inv. Corp.,
 
 9 Mass.App. 752, 404 N.E.2d 1258 (1980). Thus, it appears that the practice in Massachusetts is to try such cases to the court.
 

 [6]
 

 . The Hauses have not challenged a number of conclusions essential to the bankruptcy court’s decision to set aside the conveyance as fraudulent. Thus we have no occasion to discuss the court’s conclusions that John was rendered insolvent by the conveyance to Marie, Mass.Gen. Laws ch. 109A, §§ 2, 4, or that there was a creditor holding an allowable, unsecured claim at the time of the conveyance. 11 U.S.C. § 544(b).
 

 [7]
 

 . There is some confusion, not relevant to our decision, concerning the disparity between the $3,000 figure and the $6,500 figure. The bankruptcy court stated that the Hauses had proven Marie’s contribution of $3,000 to the North Weymouth downpayment but that there was no evidence as to where the remainder came from. There is, as the Hauses point out, a suggestion in the record that the Quincy property appreciated in value. As we later discuss, however, the size of Marie’s contribution to the downpayment does not affect the resolution of this appeal. We will assume, therefore, that the $6,500 downpayment was made entirely from the proceeds of the sale of the Quincy house.