Botsford, J.
INTRODUCTION
In this action for interpleader and declaratory relief, the plaintiffs, Chicago Title Insurance Company (Chicago Title) and Connecticut Bank and Trust Company (CBT), seek to establish their sole ownership of certain shares of stock pledged to CBT and assigned to Chicago Title by the husband of the defendant, Sheila F. DeWire. Sheila F. DeWire asserts in her defense that she is the sole owner of the stock and has filed a counterclaim in which she claims that the plaintiffs are liable for conversion of the stock after her demand for its return subsequent to her husband’s death. Both the plaintiffs and defendants have moved for summary judgment on all claims.
FACTUAL BACKGROUND
On March 30, 1982, Memtek Corporation issued ten thousand shares of common stock to Thomas A. DeWire, III (Thomas) and Sheila F. Dewire (Sheila) as joint tenants with rights of survivorship. On or about March 15, 1985, Thomas executed and delivered two promissory notes to CBT in the amounts of $100,000 and $200,000, respectively. On or about March 29, 1985, Thomas executed and delivered a pledge agreement to CBT with respect to the $200,000 note. The pledge agreement included an irrevocable stock or bond power for 10,000 shares of common stock in Memtek Corporation signed solely by Thomas.
Thomas died on March 15, 1987. On or about May 28, 1987, CBT declared the entire unpaid principal amounts and accrued interest on the promissory notes to be immediately due and payable. On or about February 1, 1988, CBT executed and delivered assignments to Chicago Title of its rights against Thomas, his heirs, executors, estate, successors and assigns. Sheila first learned of the shares of Memtek Corporation- common stock after the death of Thomas. On or about May 6, 1988, Sheila made a formal demand upon Chicago Title for return of the 10,000 shares of common stock of the Memtek Corporation.
DISCUSSION
Summary judgment is a “device to make possible the prompt disposition of controversies on their merits without a trial, if in essence there is no real dispute as to the salient facts or if only a question of law is involved.” Corrmumity National Bank v. Dawes, 369 Mass. 550, 553 (1976) (quotation omitted). Amotion for summary judgment is in order “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to a judgment as a matter of law." Mass.RCiv.P. 56(c), 365 Mass. 824 (1974). The burden is on the moving party to “show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” Flesner v. Technical Communications Corp., 410 Mass. 805, 808-09 (1991). This burden need not be met by affirmative evidence negating an essential element of the plaintiffs case, but may be satisfied by demonstrating that proof of that element is unlikely to be forthcoming at trial. Id. at 809. See Kourouvacilis v. General Motors Corp., 410 Mass. 706, 714 (1991), citing Celotex Corp. v. Catrett, 447 U.S. 317, 328 (1986). If such a showing is made, the party opposing summary judgment must respond by “set[ting] forth specific facts showing that there is a genuine issue for trial.” Kourouvacilis v. General Motors Corp., supra, 410 Mass. at 716.
There are three issues presented in this case. The first is whether Sheila has a valid claim of surviving *179 ownership in the Memtek stock where the evidence shows that she did not contribute to the purchase price. If that question is answered affirmatively, the second question is whether Thomas’s pledge of the stock to CBT in 1985 effectively extinguished any ownership interest Sheila may have had in it. The third question focuses on the validity of Sheila’s conversion claim.
1.Sheila’s Ownership Interest in the Memtek Stock
Where a husband or wife provides the entire purchase price for property and causes title to be put in the spouse’s name, the presumption arises that a gift to the spouse is intended. Ross v. Ross, 2 Mass.App.Ct. 502, 508 (1974). This presumption is rebuttable by a showing on dear evidence that the actual intent was different from that which would be otherwise presumed. Id. Accord, Krasner v. Krasner, 362 Mass. 186, 188-89 (1972). See Gallagher v. Taylor, 26 Mass.App.Ct. 876, 881 (1989) (transaction is taken at face value unless evidence shows that it was not so intended).
The Supreme Judicial Court has held that share certificates are much less likely than bank accounts to be put in joint names merely for convenience; there are a number of cases in which the court has disapproved findings that share certificates were placed in joint names without donative intent. See, e.g., McLennan v. McLennan, 316 Mass. 593, 597 (1944) (facts that wife furnished no money for stocks and that husband reserved right of control did not impair validity of transaction creating joint tenancy with right of survivorship); Ross v. Ross, supra, 2 Mass.App.Ct. at 508 (evidence merely that wife directed bank stock purchased from her own assets to be issued in her and her husband’s names jointly so as to take advantage of dividend tax exclusion was insufficient to rebut presumption that she intended him to have a beneficial interest in stock). See also Blanchette v. Blanchette, 362 Mass. 518, 522 (1972), citing cases. When the court has sustained a finding of lack of donative intent, it has often been in cases where the parties are alive to testify on that issue. Blanchette v. Blanchette, supra, 362 Mass. at 522.[3] See White v. White, 346 Mass. 76, 79-80 (1963).
The undisputed facts of this case create a presumption that Thomas and Sheila were joint tenants with right of survivorship of the Memtek stock. The plaintiffs argue that Thomas purchased the shares of Memtek stock without Sheila’s knowledge, and that he exercised sole control over the stock, thus defeating any claim of joint tenancy with rights of survivorship by Sheila. However, even if Thomas had purchased the stock solely with his funds,[4] the plaintiffs would have to demonstrate by clear evidence that Thomas lacked donative intent. See Ross v. Ross, supra, 2 Mass.App.Ct. at 508 ("[t]he basis of the judge’s finding [of lack of donative intent] can only be the plaintiff s testimony as to the effect that she was indifferent to whether the stock was issued to her alone or to her and the defendant as joint tenants”). The plaintiffs have produced no materials which rebut the presumption that Thomas had the requisite donative intent with regard to the stock. Furthermore, because Thomas is deceased, such evidence as to his intent is unlikely to be forthcoming at trial. Compare Blanchette v. Blanchette, supra, 362 Mass. at 522 (divorce case; husband testified to his lack of donative intent). The fact that only Thomas exercised control over the stock, or that Sheila had no knowledge of the disposition of the stock is insufficient as a matter of law to support a finding that Thomas did not create a valid joint tenancy with right of survivorship.
2.Validity of the Stock Pledge
Article Eight of the Uniform Commercial Code governs the relationships, rights and duties of all persons and parties that deal with securities. Section 8-308(1) of the Code (G.L.c. 106, §8-308(1)) provides that “[a]n indorsement of a certificated security in registered form is made when an appropriate person signs on it or on a separate document an assignment or transfer of the security or a power to assign or transfer it or his signature is written without more upon the back of the security.”[5] An “appropriate person” is defined as the person specified by the certificated security or by a special indorsement to be the person entitled to the security. G.L.c. 106, §8-308(6).
Thomas and Sheila, joint tenants with right of survivorship, are both specified on the Memtek stock as the owners, and thus entitled to the stock. Under G.L.c. 106, §8-308(6), they are collectively or together the appropriate persons to be signing an instrument of assignment. For an assignment of stock owned by two or more persons to be valid, all joint owners designated on the security must sign unless one cannot sign because of death. G.L.c. 106, §8-308(8)(d).[6] Since both of the appropriate persons did not sign the stock power, the transfer was ineffective.[7] Accordingly, Thomas’s pledge of the 10,000 shares of Memtek stock was valid as a matter of law.[8]
3.Conversion
Sheila’s counterclaim alleges that CBT and Chicago Title effectively converted the Memtek stock when they refused to honor her demand for the stock’s return after her husband died. In order to establish a prima facie case of intentional conversion Sheila must show that CBT and Chicago Title intentionally and wrongfully exercised acts of ownership, control or dominion over her personal property to which they then had no right of possession. See Restatement (Second) ofTorts, §223 (1965); J. Nolan and L. Satorio, Tort Law, §55 at pp. 65-76 (1989).
Sheila obtained rightful title to the Memtek stock on March 15, 1987 when her husband died. See Heffernan v. Wollaston Credit Union, 30 Mass.App.Ct. 171, 177 (1991).[9]
After the death of Thomas and the automatic transfer of title to the stock to Sheila as his surviving joint tenant, CBT declared the balance of the loan due on or about May 28, 1987 and assigned its rights against
*180 Thomas to Chicago Title on or about February 1, 1988. Since the record reflects that CBT lawfully obtained possession, but not title, of the Memtek Stock from Thomas, CBT cannot be held liable for conversion because prior to making a claim of conversion, Sheila was required to make formal demand of the stock from CBT while it was still in possession. See Hellier v. Achorn, 255 Mass. 273, 284-85 (1926) (no liability in tort for conversion unless demand was made for return of stock while defendants held it and unless they wrongfully refused to give it up); Abington National Bank v. Ashwood Homes, Inc., 19 Mass.App.Ct. 503, 506 (1985) (demand is a necessary preliminary to an action for conversion where defendant’s possession is notwrongfiil in its inception and demand and refusal are required to put defendant in the position of wrongdoer). See also Atlantic Financial Corp. v. Galvam, 311 Mass. 49, 50-51 (1942). Therefore, CBT is granted summary judgment on Count I of Sheila’s counterclaim.
Sheila’s conversion claim against Chicago Title stands on different footing. Sheila fulfilled the appropriate prerequisite for a claim of conversion against Chicago Title, namely, formal demand of the Memtek stock at a time when Chicago Title, which had initially obtained lawful possession of the stock, still possessed it. Chicago Title has presented no evidence to dispute the existence of Sheila’s formal demand, and the record indicates that Chicago Title is still in possession of the stock. To the extent that Chicago Title continues to exercise acts of ownership, control or dominion over Sheila’s personal property to which it no longer has a right of possession, it may be liable to her for conversion.
The record, however, reflects several genuine issues of material fact still to be resolved, including (1) time of conversion; and (2) the amount of damages to be calculated from time of conversion;[10] and (3) whether Chicago Title’s action for interpleader and declaratory relief is a defense to Sheila’s conversion claim. Accordingly, Sheila’s motion for summary judgment on Count II of her counterclaim must be denied.
ORDER
For the foregoing reasons, it is ORDERED that:
1. The plaintiffs’ motion for summary judgment is DENIED, and the motion for summary judgment of the defendant Sheila F. DeWire on all counts of the plaintiffs’ complaint is ALLOWED;
2. The defendant Sheila F. DeWire’s motion for summary judgment is ALLOWED on Count I of her counterclaim, and DENIED on Count II of the counterclaim.

 Notably in Blanchette v. Blanchette, 362 Mass. 518, 523 (1972), the court stated, “[t]o avoid misunderstanding, we emphasize the right of the survivor to joint bank accounts or to share certificates in joint names, where the donor has died without manifesting an intention to defeat the gift ... In numerous cases where the original owner had died, we have upheld .the right of the survivor to the balance in the account."

 The plaintiffs do not claim that Thomas purchased the stock solely with his funds. Rather, it appears that as Sheila did not earn income, Thomas and Sheila’s funds were one and the same.

 Article 8 distinguishes between certificated and un-certificated securities. A “certificated security” is (1) “represented by an instrument issued in bearer or registered form;” (2) “of a type generally dealt in on securities exchanges or markets” or commonly recognized as a medium for investment; and (3) one of a class or series of shares or by its terms is divisible into a class or series of shares. G.L.c. 106, §8-102(1)(a). An “uncertificated security” is similar, but is not represented by an instrument. The Memtek stock fell under the category of certificated securities: it was represented by an instrument issued in the names of “Thomas A. DeWire and Sheila F. DeWire, JTWROS”; it was traded on the Boston Exchange and the Over-the-Counter Exchange; and it was by its terms classified as Memtek common stock. (The names in which the stock was issued and the fact that it was issued as common stock are evident from undisputed materials in the summary judgment record; information about where the stock is traded was provided only in Sheila’s memorandum in support of her motion for summary judgment, but it appears that the plaintiffs do not dispute it.)

General Laws c. 106, §8-308(8) (d) provides in relevant part as follows:
(8) In addition to the persons designated in ... (§8-308(6)], “an appropriate person” in (§8-308(1)] [quoted above in the text) . . . includes:
(d) if the persons designated are described as more than one person as tenants by the entirely or with right of survivorship and by reason of death all cannot sign, the survivor or survivors; . . .

 Further, the stock power on its face requires that “(t]he signature(s) to this power must correspond with the name(s) as written upon the face of the certificate(s) or bond(s) in eveiy particular without alteration or enlargement or any change whatsoever.” This restriction gave independent notice that both of the joint tenants needed to sign the pledge of the stock for it to be effective.

 The plaintiffs argue that the common law properly controls the issue of whether Thomas’s pledge of the Memtek stock was valid, and rely upon Heffeman v. Wollaston Credit Union, 30 Mass.App.Ct. 171 (1991), in support of this proposition. Their reliance is misplaced. The Hejfeman case concerned the validity of a pledge of a joint credit union passbook account. The court expressly stated that the issue whether the credit union had obtained a valid security interest in the joint account was governed by common law because “the Uniform Commercial Code does not apply to security interests in ‘any deposit account.’ ’’ Id. at 173-74. In contrast, the indorsement of the stock at issue in this case is governed specifically by Article 8 of the Code, and G.L.c. 106, §8-308 in particular.

 During the lifetime of the parties, a single joint tenant in a traditional joint tenancy may not convey or encumber the entire interest in the jointly-held property but only his own limited interest: any security interest in property conveyed by a single joint tenant which does not otherwise sever the joint tenancy terminated when the joint tenant dies, and the surviving joint owner takes title to the entire interest.

 In George v. Coolidge Bank and Trust Co., 360 Mass 635, 641 (1971), the court stated: “In an action for damages for the conversion of stock.the measure of damages is the fair market value at the time of conversion or interest. The owner is not bound to accept the return of his property, but if he retakes it, he may recover as damages the difference between the value of the property when converted and when returned plus damages -for loss of use during the period of wrongful death.” (Citations omitted.)