FRED CHECOVICH *vs.* PETER CHECOVICH & another.

Essex. February 2, 1959. — April 17, 1959.

Present: WILKINS, C.J., RONAN, SPALDING, WILLIAMS, & CUTTER, JJ.

*Trust,* Resulting trust.

A conclusion in a suit in equity that, upon a conveyance of an apartment house and garages bought at a foreclosure sale to the plaintiff's wife and son as joint tenants, the beneficial interest in the property enured to the plaintiff by way of resulting trust was justified by evidence and inferences therefrom that "most" of the down payment on the purchase price as well as all the principal and interest on a mortgage given back to the seller was paid with money of the plaintiff and that the rest of the down payment was paid by his wife as a loan to him, and that after the conveyance the plaintiff received the rents from and paid the expenses of the property and the son occupied an apartment, paid rent to the plaintiff, and was paid substantial amounts by him for repair work done on the property; and a decree ordering the son, the wife having died, to convey the property to the plaintiff was affirmed.

BILL IN EQUITY, filed in the Superior Court on September 17, 1956.

The suit was heard by *Morton,* J.

*William H. Keller,* for the defendants.

*Thomas E. Watman,* for the plaintiff.

WILLIAMS, J. This is a suit to establish and enforce a trust in real estate consisting of a six apartment house and fourteen garages located at 184–190 Arlington Street in Lawrence. The defendants are Peter Checovich, who is a son of the plaintiff, and the son's wife, Cecile. They have appealed from a decree ordering them to convey the property to the plaintiff and that Peter account for rents collected by him in the amount of $500. The evidence and findings of material facts by the trial judge are reported.

From those findings supplemented by such as we are justified in making from the evidence the following appears.

The plaintiff, now over sixty-five years of age, is of Russian extraction and came to this country in 1909. He married; and of his five children Peter, born in April, 1921, is the eldest. The plaintiff regarded his wife Julia, who died in April, 1956, as his "treasurer" and the financial head of the family, and the children looked upon their mother as the "boss." During the long depression the family encountered financial difficulties, and the plaintiff at some time was on "welfare." After about 1940, he was steadily employed. His wages were handled by his wife who also received small amounts from the children for board as they became old enough to work. In 1938 and 1939 she had received allotments of pay from Peter who at that time was a member of the Civilian Conservation Corps.

On October 15, 1942, the plaintiff accompanied by his wife and Peter attended a foreclosure sale by the Broadway Savings Bank of Lawrence of the property which is the subject of this suit. The plaintiff had difficulty in speaking and understanding English and Peter did the bidding. The property was bought in for $4,100 and Mrs. Checovich paid $50 as a deposit. On October 20 a further payment of $1,250 was made and a mortgage given back to the bank for the balance due of $2,800. The bank's deed ran to Peter Checovich and Julia Checovich as joint tenants and not as tenants in common. The mortgage and mortgage note were signed by the plaintiff, his wife, and Peter.

The judge found that the plaintiff wanted the property to be "in his wife's name as she was, not only his housewife, but managed the financial affairs." He stated that he was unable to ascertain why the property was conveyed to Julia and Peter as joint tenants. He found, however, that the attorney who drafted the deed and mortgage back to the bank thinking at first that they were husband and wife wrote in the deed to "Peter Checovich and Julia Checovich as joint tenants and not as tenants in common, nor as tenants by the entirety," and when he learned that such was

not the fact merely changed the deed by crossing out the words "nor as tenants by the entirety."

Of the $1,250 paid to the bank on October 20, 1942, "most" was found by the judge to have been "paid by the father." The balance of $2,800 due on the mortgage with "all charges in connection therewith" was entirely paid in seventeen months, payments being made from rentals received from the property "together with such amount as the plaintiff could save from his wages." Peter had entered military service on October 22, 1942, two days after the conveyance of the property. While in the service he sent allotments of $40 a month to his mother. He claims that a substantial part of these allotments was used to redeem the mortgage but the judge found that this was not a fact. Peter was discharged from the service on November 5, 1945, and about three months before this, when he was on furlough, his mother deposited the sum of $1,050 which she had accumulated for him in a joint savings account. After his discharge Peter lived with his parents for a while in one of the apartments. Following his marriage in 1946 he occupied a separate apartment and paid rent to his father. From the time of the conveyance, the judge found that the plaintiff received the rents and paid not only all the principal and interest on the mortgage, but also the cost of repairs on the premises and all taxes, water bills, and insurance. Expenses for repairs included $196 paid to Peter for labor.

On August 25, 1956, four months after his mother's death, Peter notified all tenants including his sister Nellie to pay rent to him and since then he has collected, after payments of expenses in connection with the property, the net sum of $500.

It is settled that when a purchaser of real estate pays the purchase price and takes title in the name of another the beneficial interest in the property enures to him by way of a resulting trust. *Quinn* v. *Quinn*, 260 Mass. 494, 497. *Howe* v. *Howe*, 199 Mass. 598, 600–601. *Druker* v. *Druker*, 308 Mass. 229, 230. *Collins* v. *Curtin*, 325 Mass. 123, 125. If, however, he pays but a part of the purchase price he can

enforce a trust only by showing that his payment was for some definite fractional part of the purchase price or of some distinct interest in the property. *Quinn* v. *Quinn*, 260 Mass. 494, 497. "[A] general contribution of a sum of money toward the entire purchase is not sufficient." *Druker* v. *Druker*, 308 Mass. 229, 231.

The decree in the instant case necessarily was based on a conclusion by the judge that there was a resulting trust in favor of the plaintiff. From the findings it sufficiently appears that except for the payment of $1,250 the entire purchase price including interest on the mortgage was paid from the savings of the plaintiff. As to the payment of $1,250 the judge as above stated found that "most" of it was "paid by the father." The plaintiff's wife as acting "treasurer" for the family was the custodian of her husband's savings, the board money of the children including Peter, and Peter's surplus earnings. Presumably she made the actual payment of the $1,250. There was no evidence as to how much of that payment was made from her husband's savings. Although Peter contended that she then held $700 belonging to him and that his money formed a substantial part of the payment the judge did not so find. We think it reasonably may be inferred that the mother advanced the amount necessary to make up the full amount of that payment from moneys held by her in trust for the children and that in effect it was a loan to her husband. *Howe* v. *Howe*, 199 Mass. 598, 601. See *Collins* v. *Curtin*, 325 Mass. 123. None of the children has claimed that any definite amount of his money was contributed to the purchase price without repayment. Peter now contends that the payment by his mother into their joint account of $1,050 was not an accurate accounting by her but he raised no question in respect to it while his mother was alive.

While nothing done after the completion of the purchase could effect the creation of a trust, *Quinn* v. *Quinn*, 260 Mass. 494, 503, *Dwyer* v. *Dwyer*, 275 Mass. 490, 494, *Epstein* v. *Epstein*, 287 Mass. 248, 253, the manner in which the transaction was subsequently treated by Peter and his father

is significant of their understanding of its nature.   Peter seems to have recognized his father's interest in the property by paying him rent and accepting payments for repair work in substantial amounts.

We think the evidence was sufficient to justify the implied finding of the judge that a resulting trust for the benefit of the plaintiff was established.

*Decree affirmed.*