In re David C. RAUH, Debtor.

David J. NOONAN, Trustee, Plaintiff,

v.

Kuei Fong RAUH, et al., Defendants.

Bankruptcy No. 92–40850–JFQ.
Adv. No. 92–4285.

United States Bankruptcy Court,
D. Massachusetts.

Feb. 25, 1994.

Christopher Brown, Cohen, Rosenthal, Price, Mirkin & Wernick, Springfield, MA, for David J. Noonan, Trustee.

Jerry P. Katz, Katz, Argenio & Powers, Springfield, MA, for Kuei Fong Rauh, et al.

### OPINION

JAMES F. QUEENAN, Jr., Chief Judge.

A trustee in bankruptcy brings this action to avoid allegedly fraudulent transfers made by a debtor to his wife. The most novel question presented is whether there was any transfer of property when the wife withdrew funds from the parties' joint bank accounts.

David J. Noonan (the "Trustee"), trustee in bankruptcy of David C. Rauh (the "Debtor"), seeks to avoid four categories of fraudulent transfers allegedly made by the Debtor to his wife, Kuei Fong Rauh ("Mrs. Rauh"): (i) transfer of the marital home at 127 Birch Street, Ludlow, Massachusetts, (ii) transfer of proceeds from settlement of litigation against the Debtor's partner and co-stockholder, Gary Stahelski, (iii) withdrawals from the parties' joint bank accounts, and (iv) transfer of a vacation home on Lawton Avenue, Westerly, Rhode Island.

The Debtor filed under chapter 7 on March 24, 1992. All the transactions sought to be avoided took place beyond the one year prefiling period covered by section 548 of the Bankruptcy Code. Asserting his rights under section 544(b) of the Code, the Trustee relies upon chapter 109A of the Massachusetts General Laws, the Massachusetts enactment of the Uniform Fraudulent Conveyance Act.

### I. *FACTUAL BACKGROUND*

The Debtor and Gary Stahelski formed a partnership in 1976 to engage in the plumbing and heating business, doing business under the name "Environmental Water Systems." The business was successful. Seeing the boom that was developing in real estate, the Debtor and Stahelski formed a corporation in 1982 to engage in the development of real estate, naming it E.W.S. Realty, Inc. ("Realty"). The stock was owned by the Debtor, Stahelski and a third individual whose ownership interest terminated in 1986. Realty's purpose was to build and renovate properties for rental or sale. Realty thereafter engaged in numerous transactions and made significant profits. Its principal lenders were Country Bank for Savings and Commerce Bank & Trust Co. The Debtor and Stahelski also engaged in real estate ventures outside the structure of Realty, often with other investors.

The Debtor and Mrs. Rauh were married in 1972. They have two children, Christine Rauh, a college senior, and David Rauh, Jr., a high school senior. Although Mrs. Rauh worked for a while, the Debtor was the sole source of the family's support. All funds referred to hereafter came from the Debtor's earnings and investments.

The fortunes of the Debtor and Stahelski rose and fell with the Massachusetts real estate market in the 1980's. The market began its rapid downward slide in 1988, although that did not become apparent to these parties until later. In February of 1988, the Debtor and Stahelski purchased an apartment building in West Boylston through 100% financing. On November 16, 1988 they purchased in the name of another corporation, Pioneer Valley Partners I, Inc., property in Palmer on which they intended to construct a shopping mall. Here again they employed 100% financing, obtaining a $300,000 bank loan and giving the sellers a $200,-

000 note for the $500,000 purchase price. On December 30, 1988, they had their corporation borrow $1,200,000 from Commerce Bank & Trust Co. to construct the mall. The Debtor was personally obligated on both these transactions.

Everything began to unravel in 1989. In the construction of the shopping mall, the parties ran up a large payable due to their plumbing partnership. The partnership, in turn, incurred debts to others. The partners faced the need for additional capital for the mall venture. By May of 1989, the Debtor realized he and Stahelski would be unable to pay the $200,000 note payable to the sellers of the mall, which was due in June. Another note to Country Bank for Savings, which had previously been rewritten, was also due in June.

On June 28, 1989, the Debtor disappeared, after withdrawing $9,000 from a personal bank account. He had said nothing to Mrs. Rauh about his intentions. Mrs. Rauh immediately went to see Stahelski, looking for an explanation. He told her of the dismal business picture, and furnished her the amounts of some of the larger debts for which he and the Debtor were personally obligated. The Debtor returned after a few weeks, but he and Stahelski had a parting of the ways. In August of 1989, the Debtor ceased to be an employee of Realty.

## II. *INSOLVENCY*

■ A person is insolvent under chapter 109A "when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." Mass.Gen.L. ch. 109A, § 2. The Trustee offered no direct evidence of insolvency. Mrs. Rauh introduced the Debtor's accountant, who testified that the Debtor had a net worth of $135,255 after the Debtor's January 28, 1991 transfer to Mrs. Rauh of his joint interest in their home in Ludlow, Massachusetts. Cross examination, however, revealed deficiencies in this evidence. He assigned to the Debtor the full value of Realty properties, not a fifty percent interest, and failed to take into account market declines in his valuation of other properties. He also failed to include certain bank liabilities.

Taking all this into consideration, I conclude the Debtor was insolvent after the transfer of January 28, 1991. I also find, as required by section 4 of the Massachusetts statute and section 544(b) of the Bankruptcy Code, there were claims of creditors then in existence which continue to exist today. The Trustee has not, however, sustained his burden of proving the Debtor's insolvency following the earlier transfers which the Trustee attacks.

## III. *SETTLEMENT OF STAHELSKI LITIGATION*

■ The Debtor brought suit against Stahelski and others to recover the value of his interests in Realty and the plumbing partnership. Mrs. Rauh joined in the suit, claiming damages for emotional distress caused by her dealings with Stahelski following the Debtor's disappearance. The parties settled this litigation on July 23, 1991. In the settlement, the Debtor received some trucks and equipment of little value and in exchange relinquished to Stahelski his interest in Realty and the partnership. Mrs. Rauh received some cash and a promissory note in the face amount of $40,000 executed by Thomas S. Skowyra et ux and payable to Realty, which Realty assigned to Mrs. Rauh. The note is secured by real estate owned by the Skowyras.

Mrs. Rauh contends she supplied consideration for the transfer of the note in that she released her emotional distress claim against Stahelski. I find she supplied no consideration for the assignment of this note. The entire *quid pro quo* for the note assignment was supplied by the Debtor through his release of his ownership interest in Realty and the partnership.

■ Mrs. Rauh relies on the requirement under chapter 109A that the transfer ("conveyance") in question must be "made" by the debtor, contending that the transfer here was made by Realty. It is true that chapter 109A, unlike section 548 of the Code, contains no reference to involuntary transfers. I assume for purposes of this case that any transfer coming within its coverage must be effected by the debtor.

The Debtor nevertheless made a transfer within the meaning of the statute. In furnishing the consideration for the note's assignment, he had the ability to control who would receive the consideration to be received in exchange. By consenting to an exchange in the form of assignment of the note to Mrs. Rauh, the Debtor effectively assigned his right to the note, just as he would have if it had been assigned first to him and then by him to Mrs. Rauh. The difference is one of form only. The Debtor made this transfer with the actual intent to hinder, delay or defraud his creditors.

## IV. WITHDRAWALS FROM JOINT BANK ACCOUNTS

■ Between June 1, 1989 and September 2, 1989, Mrs. Rauh withdrew $127,758 from joint bank accounts standing in hers and the Debtor's names. She placed the funds elsewhere in her name as trustee for her children or jointly with her daughter Christine. These withdrawals were as follows:

(a) June 1, 1989—$20,000 taken from Vanguard Savings Bank joint account and transferred into two $10,000 certificates of deposit at the same bank, one for each of her children;

(b) June 2, 1989—$48,000 withdrawn from a joint Bank of Boston account and placed in Mrs. Rauh's name as trustee for her son, David C. Rauh, Jr. at People's Bank;

(c) June 29, 1984—$20,000 withdrawn from a joint account at Bank of Boston and placed with IDS Financial Services, Inc. into two accounts of $10,000 each, one in the name of her son and the other in the name of her daughter;

(d) September 2, 1989—$31,998 withdrawn from a joint certificate of deposit at Vanguard Savings Bank and placed into an account in the name of Mrs. Rauh and her daughter Christine;

(e) September 2, 1989—$7,760 withdrawn from a joint account at Bank of Boston and placed into an account at Multibank in the name of Mrs. Rauh and her daughter Christine.

Mrs. Rauh made these withdrawals and created these accounts in order to take the funds from the reach of the Debtor's creditors. That was her prime motivation and intent. She did so for the benefit of her children, in order to protect a source for their education.

The Trustee contends the withdrawals constituted fraudulent transfers of the Debtor's interest in these accounts. The Trustee is not specific in alleging voluntary or involuntary transfers by the Debtor. He merely relies on the effect of the withdrawals and seeks to recover half the amount withdrawn on the theory that the Debtor's fifty percent interest was depleted.

■ As found earlier, these funds all came from the Debtor's earnings and investments. But that is immaterial. When a husband creates a joint account in his and his wife's name, there is no resulting trust of the wife's interest arising in the husband's favor. Because of the marital relationship, it is presumed the husband intended to make a gift, subject to the husband's (and wife's) withdrawal rights. *Blanchette v. Blanchette*, 362 Mass. 518, 287 N.E.2d 459 (1972); *Doucette v. Doucette*, 361 Mass. 156, 279 N.E.2d 901 (1972); *McPherson v. McPherson*, 337 Mass. 611, 150 N.E.2d 727 (1958); *Gibbons v. Gibbons*, 296 Mass. 89, 4 N.E.2d 1019 (1936); *Ross v. Ross*, 2 Mass.App.Ct. 502, 314 N.E.2d 888 (1974), *cert. denied*, 420 U.S. 947, 95 S.Ct. 1329, 43 L.Ed.2d 425 (1975), *rehearing denied*, 421 U.S. 1017, 95 S.Ct. 2426, 44 L.Ed.2d 686 (1975). The presumption is rebutted if it is established the husband intended to give his wife no present beneficial interest. *Id.* Creation of a completed gift is not defeated by the husband's failure to deliver to the wife any document necessary for her to withdraw funds, such as a passbook. The contract with the bank takes the place of the normal requirement of delivery. *Drain v. Brookline Savings Bank*, 327 Mass. 435, 99 N.E.2d 160 (1951).

The Trustee makes no contention that these accounts were mere convenience accounts created without intent to pass any beneficial interest to Mrs. Rauh. Conceding that Mrs. Rauh has a beneficial joint interest, the Trustee contends the withdrawals somehow constituted a transfer of the Debtor's interest.

■ The withdrawals involved no transfer of a property interest of the Debtor. That transfer occurred when the Debtor created the accounts. Jointly owned bank accounts are quite different from other jointly owned property. In the typical joint tenancy, one tenant cannot defeat the interest of the other by conveyance or encumbrance. The joint owner of a bank account, on the other hand, has the right to withdraw all of the funds, thereby totally divesting the other joint owner of all interest. *Heffernan v. Wollaston Credit Union*, 30 Mass.App.Ct. 171, 567 N.E.2d 933 (1991). It may be that the creator of a joint account has a cause of action against the other owner for having completely withdrawn the funds, upon establishing that in creating the account the creator did not intend to transfer that measure of beneficial enjoyment. I need not decide this point because the Trustee has failed to establish the Debtor had such a restricted donative intent. Indeed, the opposite appears to be the case, in light of the Debtor's failure to complain of the withdrawals.

■ What has been said disposes of the Trustee's other theories concerning these withdrawals. The Trustee alleges the withdrawals constituted conversion by Mrs. Rauh, or, alternatively, resulted in her unjust enrichment. Both theories flounder on the nature of property interest acquired by Mrs. Rauh.

## V. *TRANSFER OF LUDLOW HOME*

■ The Debtor and Mrs. Rauh had owned their home in Ludlow jointly as tenants by the entirety. On January 28, 1991, the Debtor signed and recorded a deed placing the property's entire ownership in Mrs. Rauh. As found earlier, he was insolvent following this conveyance, as the result of the collapse of both his plumbing partnership and his various real estate ventures.

The conveyance was made without "fair" consideration (indeed none) within the meaning of Mass.Gen.L. ch. 109A, § 4. The Debtor made the conveyance with actual intent to hinder, delay or defraud his present creditors, within the meaning of section 7 of the statute, and after it, the Debtor's remaining property constituted unreasonably small capital, within the meaning of section 5.

## VI. *TRANSFER OF FUNDS TO PURCHASE RHODE ISLAND PROPERTY*

■ On December 18, 1987, vacation property at 43 Lawton Avenue, Westerly, Rhode Island was acquired in the sole name of Mrs. Rauh for $230,000. This manner of acquiring title was consistent with the 1985 purchase of a prior vacation home in Rhode Island, which was also acquired in the sole name of Mrs. Rauh. Mrs. Rauh managed the property thereafter as rental property. About $220,000 of the purchase price came from the parties' joint bank account with Country Bank for Savings, and $10,000 came from another joint account. The principal sources of the account balance at Country Bank for Savings were $130,000 of proceeds from the sale of jointly owned property and $80,000 of proceeds from a joint construction loan secured by jointly owned property.

The Debtor intended to make a gift of his interest in these joint accounts and to place in Mrs. Rauh the entire beneficial ownership of the Rhode Island property. As previously discussed, there is no evidence the Debtor was insolvent in 1987. To the contrary, I find he was then solvent. Nor has the Trustee sustained his burden of proving that the gift involved in this transfer (i) was made by the Debtor with intent to hinder, delay or defraud his creditors, (ii) was made with the intention or belief he would incur debts beyond his ability to pay, or (iii) left the debtor with property which constituted unreasonably small capital. For the reasons set forth in the discussion of the parties' bank accounts, no resulting or constructive trust arose in the Debtor's favor from this transaction.

## VII. *CONCLUSION*

A separate judgment has issued (i) avoiding the transfer of the Debtor's joint interest in the parties' Ludlow home, (ii) avoiding the transfer of the Skowyra note and mortgage, (iii) ordering the Skowyras to make all future payments to the Trustee, (iv) establishing Mrs. Rauh's indebtedness to the Trustee for payments received by her under the Skowyra Note, and (v) dismissing all other counts of the complaint.

*JUDGMENT*

Upon David J. Noonan's (the "Trustee") complaint seeking to avoid allegedly fraudulent transfers made by David C. Rauh (the "Debtor") to his wife, Kuei Fong Rauh ("Mrs. Rauh"), it is

ORDERED that the following transfers are hereby declared null and void:

(1) the January 28, 1991 transfer to Mrs. Rauh of the Debtor's joint interest in the parties' Ludlow home, recorded in the Hampden County Registry of Deeds at Book 7633, Page 173, and

(2) the July 23, 1991 assignment by E.W.S. Realty, Inc. to Mrs. Rauh of a note and mortgage of Thomas S. and Judith A. Skowyra payable to E.W.S. Realty Co., Inc.

FURTHER ORDERED AND AD-JUDGED:

(1) Thomas S. and Judith A. Skowyra make all future payments under the note and mortgage to the Trustee,

(2) the Trustee shall recover of the Defendant, Mrs. Rauh, the sum of the payments she received under the Thomas S. and Judith A. Skowyra note and mortgage plus post-judgment interest at the rate of 3.74% as provided for by 28 U.S.C. § 1961(a) from the date of this judgment until the debt is paid,

(3) the Trustee shall submit within ten days of this order a form of judgment stating the dollar value of payments received by Mrs. Rauh pursuant to the Thomas S. and Judith A. Skowyra note and mortgage, and

(4) all other counts of the complaint are dismissed.