**Michael B. FEINMAN, Chapter 7 Trustee, Plaintiff,**

**v.**

**Vivien LOMBARDO, Individually and as Trustee of 49 Edge Hill Realty Trust, Pio Lombardo, as Trustee of 49 Edge Hill Trust, Defendants.**

**Civil Action No. 95–12065–RCL.**

United States District Court, D. Massachusetts.

Oct. 27, 1997.

is clear. *See In re Haffner,* 198 B.R. at 649; *In re Mastromarino,* 197 B.R. at 177; *In re Snow,* 185 B.R. at 402.

Michael B. Feinman, Andover, MA, Pro se.

Jeffrey J. Cymrot, Law Offices of Michael B. Feinman, Andover, MA, for Plaintiff.

John D. Hanify, Charles, A. Dale, Karen A. Whitley, Hanify & King, P.C., Boston, MA, Richard R. Blumenthal, Silverman & Kudisch, P.C., Boston, MA, for Defendants.

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (# 17)

COLLINGS, United States Magistrate Judge.

### I. Introduction

A trustee in bankruptcy brings this action seeking to have an alleged property interest of the debtor in his marital residence declared to be part of the bankruptcy estate. According to the trustee, the debtor's interest in the property is held in either a resulting trust or a constructive trust.

The defendants have moved for summary judgment on the grounds that the trustee has failed to produce evidence to rebut the presumption that the debtor gifted his interest in the marital residence to his wife. In addition to faltering on its merits, the resulting trust claim is also purportedly time barred. Furthermore, the trustee's failure to bring a fraudulent conveyance action against the debtor, according to the defendants, precludes the Court from imposing a constructive trust.

With the parties' consent, this case has been referred and reassigned to the undersigned for all purposes, including trial and entry of judgment, pursuant to 28 U.S.C. § 636(c). Oral argument on the defendants' dispositive motion was heard on June 13, 1997, and now, with the record complete, the summary judgment motion is in a posture for decision.

### I. Facts

#### A. Procedural History

On June 22, 1994, the defendant, Pio Lombardo (the "Debtor"), filed a voluntary Chapter 7 petition for relief, Chapter 7 Case No. 94–14365–WCH. (Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment on the Adversary Complaint, # 18) On July 7, 1995, the Chapter 7 Trustee, Michael B. Feinman (the "Trustee"), commenced an adversary proceeding in Bankruptcy Court against the Debtor and his wife, defendant Vivien Lombardo, to determine the bankruptcy estate's interest in the defendants' residence located at 49 Edge Hill Road, Newton, Massachusetts. (# 18) In the complaint, the Trustee alleged that the bankruptcy estate holds an equitable interest in the Edge Hill property via a resulting trust or constructive trust. (Verified Complaint to Determine Estate's Interest in Property, # 1) Before answering the complaint, the defendants filed a motion to dismiss the adversary proceeding (# 5) and a memorandum opposing the Trustee's motion for authority to file a memorandum of lis pendens. (De-

fendants' Opposition to the Trustee's Motion for Authority to File Memorandum of Lis Pendens, # 7) The defendants' motion to dismiss was denied (# 5–1, August 7, 1995) while the Trustee's motion for authority to file a memorandum of *lis pendens* was granted. The defendants then filed an answer and a jury demand. (Defendant's [sic] Answer and Jury Demand, # 11)

Consequent to the defendants jury demand, the bankruptcy judge transferred the case to the United States District Court. (Bankruptcy Court Transmittal Sheet, # 13)[1] The United States District Judge to whom the case was assigned granted the Trustee's motion to strike the defendants' jury demand but denied his motion to remand the adversary proceeding to the Bankruptcy Court.[2] (Order of Lindsay, D.J., # 12–1) The defendants then filed the instant motion for summary judgment (# 17), which has been opposed by the Trustee. (Chapter 7 Trustee's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, # 22)

*B. Historical Background*

The defendants, Pio and Vivien Lombardo, are husband and wife. (Undisputed Material Facts # 18 ¶ 1; Statement of Undisputed Material Facts # 22 ¶ 1) According to the defendants' version of events, in 1980 Mr. Lombardo founded an environmental engineering and consulting firm. Five years later in 1985, Mrs. Lombardo insisted that the couple's home not be exposed to the potential liability associated with Mr. Lombardo's business. It is undisputed that thereafter on March 11, 1986, Mr. Lombardo transferred his interest in the couple's Greenwich Park property to the Greenwich Park Trust, of which he and Mrs. Lombardo were trustees and Mrs. Lombardo was the sole beneficiary. (Undisputed Material Facts # 18 ¶¶ 4, 5; Statement of Undisputed Material Facts # 22 ¶¶ 4, 5) Mr. Lombardo asserts that he agreed to support his family's financial needs, even though the family residence would remain the property of Mrs. Lombardo. (# 18 at 3–4)

On June 9, 1986, Mr. and Mrs. Lombardo individually executed a purchase and sale agreement for property located at 49 Edge Hill Road in Newton, Massachusetts, a house that had been found by Mrs. Lombardo who had then negotiated for its purchase. (# 18 at 4; # 22, Statement of Disputed Material Facts, ¶ 3) According to the agreement, a $40,000 deposit was paid to the sellers that day. (# 22, Exh. 1, Standard Form Purchase and Sale Agreement) The Lombardos subsequently submitted a residential loan application to the Boston Safe Deposit and Trust Company ("Boston Trust") on which Mr. and Mrs. Lombardo reported their monthly earnings as $17,575 and $1,650, respectively. (# 22, Statement of Disputed Material Facts, ¶ 4)

On November 18, 1986, Mr. and Mrs. Lombardo established the Edge Hill Road Realty Trust of which both are trustees, but only Mrs. Lombardo is a beneficiary. (# 18, Exh. 2B, Declaration of Trust Establishing 49 Edge Hill Road Realty Trust) That same day, Mr. and Mrs. Lombardo, individually, executed an adjustable rate note in favor of Boston Trust in the amount of $390,000. (# 22, Statement of Disputed Material Facts, ¶ 7) Boston Trust issued a check in this amount to the Lombardos; Mr. Lombardo paid the loan origination fees and attorney fees due to Boston Trust. (# 22, Statement of Disputed Material Facts, ¶¶ 6, 8) On November 18th the sellers conveyed the Edge Hill property to the defendants, as trustees for the Edge Hill Trust, for $780,000. As consideration for the conveyance, the Lombardos gave the sellers a $390,000 mortgage. This mortgage to the sellers was ultimately satisfied by the proceeds of the sale of the Greenwich Park property, i.e., three condominiums, by the Greenwich Park Trust dur-

---

1. In essence # 13 of the Bankruptcy Court Docket is # 1 of the District Court Docket, Clerk's Certificate and Bankruptcy Record Received Re: Jury Claim.

2. "To the extent that the motion seeks to have jury demand stricken, it is allowed. The plaintiff's claims and the relief he seeks are equitable in nature and no right to a jury attaches. To the extent the motion seeks remand to the bankruptcy court, it is denied.". (Order of Lindsay, D.J., # 12–1)

ing the period of late 1986 into early 1987. (# 18; # 22, Statement of Disputed Material Facts, ¶¶ 11, 12) The mortgage in favor of the Boston Trust is being paid in the usual course.

Since at least 1986, Mr. and Mrs. Lombardo have maintained separate bank accounts. Mr. Lombardo periodically transfers money from his bank account to that of Mrs. Lombardo; according to the defendants, the funds are intended to support Mrs. Lombardo and the couple's two children. From her own account, Mrs. Lombardo pays the mortgage and other carrying expenses on the Edge Hill property. (# 18 at 5)

In order to secure loans needed by Mr. Lombardo's business, the Edge Hill Trust gave two mortgages—one for $200,000 in 1987 and the other for $50,000 in 1988—to Raymond C. Green & Co., Inc. (# 18; # 22, Statement of Disputed Material Facts, ¶¶ 14, 16) The loans were repaid and the mortgages discharged. (# 18 at 5)

This recitation of facts is enough to establish the context for the defendants' summary judgment motion.

### III. Summary Judgment Standard

When considering whether to grant summary judgment, the court must determine whether:

> ... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is a genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c).

In making this assessment, the court must "accept all reasonable inferences favorable to the nonmovant." *Int'l Ass'n of Machinists and Aerospace Workers v. Winship Green Nursing Ctr.*, 103 F.3d 196, 205 (1st Cir. 1996); *see also Lawton v. State Mut. Life Assurance Co. of America*, 101 F.3d 218, 222–23 (1st Cir.1996); *Borschow Hospital and Medical Supplies v. Cesar Castillo, Inc.*, 96 F.3d 10, 12 (1st Cir.1996); *Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 253 (1st Cir.1996); *One Nat'l Bank v. Antonellis*, 80 F.3d 606, 608 (1st Cir.1996).

A factual dispute which is neither "genuine" nor "material" will not survive a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In deciding whether a factual dispute is "genuine", the court must determine whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.; see also Serrano–Cruz v. DFI Puerto Rico, Inc.*, 109 F.3d 23, 25 (1st Cir.1996); *Sanchez v. Alvarado*, 101 F.3d 223, 227 (1st Cir.1996); *Roche*, 81 F.3d at 253. In weighing whether a factual dispute is "material", the court must examine the substantive law of the case, because "only disputes over the facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *see also Vinick v. Commissioner of Internal Revenue*, 110 F.3d 168, 171 (1st Cir.1997); *Sanchez*, 101 F.3d at 227; *Roche*, 81 F.3d at 253. "Thus the substantive law defines which facts are material." *Sanchez*, 101 F.3d at 227 (citing *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2509–10).

Rule 56 does not permit the party opposed to the summary judgment motion to rest upon the mere allegations or denials in its own pleadings. *See Int'l Ass'n of Machinists and Aerospace Workers*, 103 F.3d at 205 (quoting *Wynne v. Tufts Univ. School of Medicine*, 976 F.2d 791, 794 (1st Cir.1992), *cert. denied*, 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993) ("The core purpose of the summary judgment procedure is to 'pierce the boilerplate of the pleadings' and evaluate the proof to determine whether a trial will serve any useful purpose.")). Rather, Rule 56(c):

> mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Moreover,

> even in cases where elusive concepts such as motive and intent are at issue, summary judgment may be appropriate if the non-moving party rests merely upon the conclusory allegations, improbable inferences, and unsupported speculation.

*Ayala-Gerena v. Bristol Myers–Squibb Co.*, 95 F.3d 86, 95 (1st Cir.1996) (quoting *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir.1993) (quoting *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990))); *see also Barbour*, 63 F.3d at 37 (quoting *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir.1993) (quoting *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990))). *See also Roche*, 81 F.3d at 253 (1st Cir.1996) (quoting *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir. 1994)) (" '[M]otions for summary judgment must be decided on the record as it stands, not on a litigant's visions of what the facts might some day reveal.' ").

## IV. Discussion

■ At the outset, a brief explanation as to how and why the Trustee can bring the present case would be appropriate. A primary duty of a Chapter 7 Trustee is to collect and reduce to money "the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interest of the parties in interest." 9 Am.Jur. 2D *Bankruptcy* § 302 (1991). The assets of the bankruptcy estate include the debtor's legal and equitable interests in property as of the commencement of the bankruptcy. *See In re Educators Group Health Trust*, 25 F.3d 1281, 1283 (5th Cir. 1994) (quoting 11 U.S.C. § 541 (a)(1) (1988)). For example, a debtor's beneficial interest in a trust, *see* 9 Am.Jur. 2D *Bankruptcy* § 944 (1991), and causes of action are treated as property of the bankruptcy estate. *See In re Educators Group Health Trust*, 25 F.3d at 1283.

■ The bankruptcy trustee has exclusive standing to assert those state law claims that the debtor could have raised as of the commencement of the bankruptcy proceedings. *See Id.* at 1284; 9 Am.Jur. 2D *Bankruptcy* § 290 (1991) ("A trustee has standing to pursue bankruptcy and state common-law claims on behalf of the debtor since the trustee stands in the shoes of the debtor and has the right to bring whatever actions the debtor could bring on its own behalf."). By the same token, the bankruptcy estate, as successor to the debtor's causes of action, is subject to the same defenses that the debtor would have faced. *In re Educators Group Health Trust*, 25 F.3d at 1286, 1 Daniel R. Cowans, *Bankruptcy Law and Practice* § 2.7 (6th ed.1994).

### A. The Constructive Trust Claim

■ In the complaint in this case, the Trustee alleges that the bankruptcy estate can claim an equitable interest in the Edge Hill property via a constructive trust. Under a constructive trust theory, the Trustee does not have to show that the defendants intended to create a trust in Mr. Lombardo's favor, *see* 76 Am.Jur. 2D *Trusts* §§ 161, 163 (1992), but the Trustee must allege and show that there is evidence of fraud, breach of fiduciary duty, or other misconduct on the part of the defendants. *See Collins v. Guggenheim*, 417 Mass. 615, 618, 631 N.E.2d 1016, 1017 (1994) (refusing to impose a constructive trust where there was no evidence of fraud or breach of duty by the defendant, even though both plaintiff and defendant, an unmarried couple, contributed to the maintenance and improvement of their residential farm and joint bank account); *Fortin v. Roman Catholic Bishop of Worcester*, 416 Mass. 781, 789, 625 N.E.2d 1352, 1357–58 (1994). Such a showing is required to made because a constructive trust is an equitable *remedy* that the court *imposes* to prevent unjust enrichment. *See In re Nat'l Reserve Corp.*, 199 B.R. 241, 247 (Bankr.D.Mass., 1996); *In re Monarch Capital Corp.*, 130 B.R. 368, 376 (Bankr.D.Mass., 1991); *In re Mill Concepts Corp.*, 123 B.R. 938, 944 (Bankr.D.Mass., 1991); 76 Am.Jur. 2D *Trusts* § 163 (1992).

■ The Trustee does not allege any acts of fraud in his complaint; at most, there seems to be a suggestion that the transfer of property between the defendants was not

entirely legitimate.[3] Absent an underlying cause of action for fraud or other misconduct by the defendants, the Trustee's constructive trust claim is not viable because, standing alone, it is not an independent cause of action. *See Shick v. Farmers Home Admin.,* 583 F.Supp. 534, 536 n. 2 (D.Mass., 1984), *aff'd in part, rev'd in part on different grounds,* 748 F.2d 35 (1st Cir.1984) (concluding that the court would not consider the plaintiffs' claim that the defendant held their property in a constructive trust for their benefit because a constructive trust is a remedy and not a cause of action). The Trustee's silence in the face of the defendants' arguments to this effect is perhaps a tacit acknowledgment that the constructive trust claim is without merit.

### B. The Resulting Trust Claim

#### (1) Statute of Limitations Issue

Because the resulting trust claim is capable of resolution on its merits, the limitations issue raised by the defendants shall only be briefly addressed. There is no dispute that the applicable statute of limitations on a resulting trust claim is six years under Mass. Gen. Laws ch. 260, § 2. *See Stapleton v. Macchi,* 401 Mass. 725, 729, 519 N.E.2d 273, 276 (1988) ("The applicable statue of limitations for the purposes of enforcing a resulting trust is six years.") (citations omitted). The parties disagree, however, at what point the statute of limitations begins to run.

In the defendants' view, Mr. Lombardo's transfer of his interest in the couple's marital residence to the Greenwich Park Trust is the only transaction out of which a resulting trust in his favor could have arisen. The defendants contend that if Mr. Lombardo— hence, the Trustee—had a cause of action for a resulting trust, it accrued at the time of that transfer in March, 1986. Consequently, it is asserted that the Trustee's claim is time barred because the present action was insti-

tuted in July, 1995, well beyond the six-year limitations period.

In response, the Trustee denies that the complaint challenges the transfer of Mr. Lombardo's interest in the Greenwich Park property; rather, the complaint targets the transfer to the Edge Hill Trust. The Trustee takes the position that the statute of limitations does not begin to run until the beneficiary of the resulting trust is on notice that the trustee has repudiated it. It is argued that Mr. Lombardo, as trustee for the Edge Hill Trust, never repudiated that trust. (# 22 at 7) ("[Mr. Lombardo] has never repudiated the Edge Hill Trust or, acting as trustee of the Edge Hill Trust, acted to terminate it to the knowledge of its only beneficiary, [Mrs. Lombardo].") Thus, the Trustee asserts that the earliest time at which the statute of limitations began to run was in June, 1994, when the Trustee was appointed; at the latest, in July, 1995, when the present action was begun. Under either scenario, the resulting trust claim would be timely.

■ The Trustee correctly notes that the statute of limitations begins to run when the trustee of a resulting trust repudiates it. *See Hanrihan v. Hanrihan,* 342 Mass. 559, 567, 174 N.E.2d 449, 453 (1961) ("It is settled that the statute of limitations does not run as to a resulting trust until there has been a repudiation by the trustee."); *Brodeur v. Am. Rex-oil Heating Fuel Co., Inc.,* 13 Mass.App.Ct. 939, 940, 430 N.E.2d 1243, 1244–45 (1982) (The cause of action accrues "when the alleged trust is repudiated or otherwise terminated to the knowledge of the beneficiary."); *Cosentino v. Cosentino,* 10 Mass.App.Ct. 892, 892, 409 N.E.2d 809, 810 (1980) (quoting *Kearney v. Mechanics Nat'l Bank,* 343 Mass. 699, 703, 180 N.E.2d 667, 668 (1962)). Assuming, *arguendo,* that the Trustee's resulting trust claim is valid, either the Edge Hill Trust and/or Mrs. Lombardo holds Mr. Lombardo's interest in the Edge Hill property in

---

**3.** The Trustee alleged in the complaint, under the constructive trust claim, that: 1) "[n]otwithstanding conveyance of the Residence to the Trust, the Debtor continues to control the Residence and to mingle his business affairs with those of the Trust;" (# 1, ¶ 29) 2) "[n]otwithstanding conveyance of the Residence to the

Trust, the Debtor and Vivien Lombardo as trustees have not observed the terms of the Trust;" (# 1, ¶ 30) 3) "[t]he Debtor and Vivien Lombardo, notwithstanding this declaration establishing the Trust, have failed to maintain the Trust as a separate entity." (# 1, ¶ 31)

a resulting trust for him. That is, Mrs. Lombardo is the *trustee* and Mr. Lombardo is the *beneficiary* of the *resulting* trust. Therefore it is immaterial whether Mr. Lombardo—or the Trustee—repudiated or failed to repudiate the Edge Hill Trust for only Mrs. Lombardo, as trustee of the resulting trust, could act to start the running of the limitations period.

In any event, because the Trustee's resulting trust claim fails on its merits, it is not necessary to determine whether the limitations period has expired.

### (2) Merits of the Resulting Trust Claim

Generally speaking, it is presumed that when one party pays the purchase price of property, but title is placed in the name of another, the latter holds the property in a resulting trust for the payor. That is, the payor intended the benefit of the property to inure to him or her, not the title holder. *See Robinson v. Robinson,* 366 Mass. 582, 585, 321 N.E.2d 637, 639 (1974); *Frank v. Frank,* 335 Mass. 130, 135, 138 N.E.2d 586, 588 (1956); *Ross v. Ross,* 2 Mass.App.Ct. 502, 508, 314 N.E.2d 888, 893 (1974); Restatement (Second) of Trusts § 440 (1976); 76 Am.Jur.2d *Trusts* § 169 (1992). In contrast, when the transfer is between spouses, the presumption is that the payor intended the title holder to take the property by way of a gift, rather than holding it in a resulting trust. *See Ross,* 2 Mass. App.Ct. at 508, 314 N.E.2d at 893; *In re Rauh,* 164 B.R. 419, 423 (Bankr.D.Mass., 1994), *aff'd* 119 F.3d 46 (1st Cir.1997); Restatement (Second) of Trusts § 442 (1976); 76 Am.Jur. 2D *Trusts* § 183 (1992). Either presumption is rebuttable by proof of a contrary intent. *See Pollock v. Pollock,* 223 Mass. 382, 384, 111 N.E. 963, 964 (1916);

*Ross,* 2 Mass.App.Ct. at 508, 314 N.E.2d at 893, 76 Am.Jur. 2D *Trusts* § 183 (1992).

In the present case, a fundamental dispute between the parties is whether the defendants are entitled to invoke the marital presumption. According to the defendants, the marital presumption applies because the transfers of the Greenwich Park and Edge Hill properties were "completed gifts." [4] (# 18 at 17) The Trustee contests Mr. and Mrs. Lombardo's focus on the Greenwich Park transfer, arguing instead that the defendants are not entitled to the marital presumption because the purchase of the Edge Hill property involved a transfer of Mr. Lombardo's interest to the Edge Hill Trust, not to Mrs. Lombardo. Because there was no transfer between spouses, the argument runs that it should be presumed the Edge Hill Trust holds the property for the benefit of Mr. Lombardo.

Assuming without deciding that the marital presumption is not applicable and that a resulting trust is presumed to exist, the Trustee still carries the burden of establishing that Mr. Lombardo holds a beneficial interest in the Edge Hill property in that resulting trust. To prove this, the Trustee must show either that Mr. Lombardo provided the entire purchase price for the property or that he paid a specific and definite amount toward the purchase price which entitles him to an exact or definite interest in the property.[5] *See Druker v. Druker,* 308 Mass. 229, 230–31, 31 N.E.2d 524, 525 (1941); *Karas v. Karas,* 288 Mass. 460, 462–63, 193 N.E. 18, 19 (1934); *Dwyer v. Dwyer,* 275 Mass. 490, 494, 176 N.E. 619, 620 (1931); *O'Brien v. O'Brien,* 256 Mass. 308, 309, 310, 152 N.E. 80, 80, 81 (1926); *Bailey v. Hemenway,* 147 Mass. 326, 328, 17 N.E. 645, 646–47 (1888); Restatement (Second) of Trusts § 454 (1976).

---

**4.** "In the present case, the law presumes that Mr. Lombardo's transfer of the Greenwich Park Trust Property into the Greenwich Park Trust was a gift to Mrs. Lombardo. The proceeds of the Greenwich Park Property were later used to purchase the Edge Hill property." (# 18 at 13)

**5.** The Trustee forthrightly acknowledges that he has this burden as the party moving to establish a resulting trust in Mr. Lombardo's favor. The Trustee must prove that "(1) [Mr. Lombardo]

provided the entire consideration or a specific and definite part of the consideration for the Edge Hill Property; and (2) that the defendants intended [Mr. Lombardo] to receive a determinate and fixed fraction of the Edge Hill Property." (# 22 at 3, n. 1 citing *Pollock v. Pollock,* 223 Mass. 382, 384, 111 N.E. 963, 964 (1916); *Karas v. Karas,* 288 Mass. 460, 462–463, 193 N.E. 18, 19 (1934))

The Trustee advances numerous arguments in support of his position. At the outset, it cannot be maintained that Mr. Lombardo provided the full consideration for the purchase of the Edge Hill property because both he and Mrs. Lombardo—as individuals, not trustees of the Edge Hill Trust—signed the mortgage note. *See McPherson v. McPherson*, 337 Mass. 611, 614, 150 N.E.2d 727, 729 (1958); *Ross*, 2 Mass.App.Ct. at 509, 314 N.E.2d at 894. As cosigners of the mortgage, Mr. and Mrs. Lombardo each obligated themselves to repay the mortgage to the same extent as the other.[6] *Goldman v. Finkel*, 341 Mass. 492, 494, 170 N.E.2d 474, 475 (1960) ("For aught that appears, the defendant obligated herself to repay the mortgage loan to the same extent as the plaintiff. If she did, the plaintiff did not furnish the entire purchase price."); *McPherson*, 337 Mass. at 614, 150 N.E.2d at 729 ("Another factor militating against a resulting trust is the evidence that Rosetta [the defendant] obligated herself to repay the mortgage loans used for the purchase price to the same extent as Roy [the plaintiff]. It therefore cannot be said that he furnished the entire purchase price.").

Next, the Trustee contends that Mr. Lombardo's partial cash contribution to the purchase price entitles him to a specific fractional interest in the Edge Hill property. To support this theory, the Trustee must show not that Mr. Lombardo made a general cash contribution, but that the defendants intended for him to take, in return for his contribution, a specific and definite interest in the Edge Hill property.[7] *See MacNeil v. MacNeil*, 312 Mass. 183, 187, 43 N.E.2d 667, 670 (1942); *Druker*, 308 Mass. at 231, 31 N.E.2d

at 525; *Karas*, 288 Mass. at 462–63, 193 N.E. at 19.

The bankruptcy estate might be entitled to an interest in the Edge Hill property via a resulting trust if the Trustee establishes that Mr. Lombardo made specific cash contributions toward the purchase at the time of the conveyance. *See Bailey*, 147 Mass. at 329, 17 N.E. at 647. With this goal, the Trustee alleges in the complaint that Mr. Lombardo made the $40,000 deposit on the Edge Hill property using funds from the sale of at least a portion of the Greenwich Park property. (# 1 ¶ 12; # 13 at 5) However, because Mrs. Lombardo was the sole beneficiary of the Greenwich Park Trust—which the Trustee admits—Mr. Lombardo had no claim to the proceeds from the sale of that trust property. Therefore, there is no factual basis for the Trustee to attribute payment of the deposit from Mr. Lombardo's funds.[8]

Third, the Trustee asserts that two checks (totaling $4,750) signed by Mr. Lombardo to cover the loan origination fees and attorney fees associated with the mortgage on the Edge Hill property represent his contribution to the purchase price. In the case of *Saulnier v. Saulnier*, the purchase price was satisfied entirely by a mortgage note signed by the defendant and endorsed by his father, one of the plaintiffs. No resulting trust arose in favor of the plaintiffs because the defendant was primarily liable for the note and plaintiffs' payments at the time of purchase were limited to a $50 deposit and $96 in transaction fees. *See Saulnier v. Saulnier*, 328 Mass. 238, 240, 103 N.E.2d 225, 226 (1952). Similarly, Mr. Lombardo's payment of the mortgage transaction fees is not evidence of his specific and definite contribu-

---

6. Under the note, both Mr. and Mrs. Lombardo were "fully and personally obligated to keep all of the promises made in [the] Note, including the promise to pay the full amount owed." (# 22, Exh. 5, Boston Safe Deposit and Trust Company Adjustable Rate Note, ¶ 9)

7. The Trustee alleges that Mr. Lombardo "provided purchase money for the Edge Hill Property jointly with [Mrs. Lombardo]. Therefore, [Mr. Lombardo] furnished a specific part of the purchase price for the Edge Hill Property." (# 22 at 11) The Trustee, however, never identifies the exact sum that Mr. Lombardo contributed and

the source of his contribution (for example, his separate bank account).

8. Presumably, the Trustee looks to the June 9, 1986 purchase and sale agreement as evidence to support this allegation. Both Mr. and Mrs. Lombardo, as individuals, signed the purchase and sale agreement which stated that they paid a $40,000 deposit on that day. (# 22, Exh. 1) This is insufficient in the face of the undisputed evidence, however, to raise a genuine issue of material fact as to whether Mr. Lombardo provided, out of his own funds, the deposit.

tion toward the purchase price of the Edge Hill property, nor does it serve to raise a genuine issue of material fact with regard to Mr. Lombardo's interest in that property.

 Fourth, the Trustee relies on post-conveyance evidence to argue that a resulting trust arises in Mr. Lombardo's favor. For example, it is noted that Mrs. Lombardo's income alone is inadequate to maintain the Edge Hill property. In effect, the Trustee contends that Mr. Lombardo, by periodically transferring money to Mrs. Lombardo's bank account, actually pays the mortgage and other carrying expenses.[9] (# 22) This argument is tenuous because a resulting trust must arise at the time of the conveyance, see *Bailey*, 147 Mass. at 329, 17 N.E. at 647; post-conveyance payments are relevant only if the parties intended these payments to act as the "contemplated consideration for the conveyance." *Goldman*, 341 Mass. at 494, 170 N.E.2d at 476; *Saulnier*, 328 Mass. at 240, 103 N.E.2d at 226.

 In the *Saulnier* case, the court concluded that there was no evidence of an agreement that the plaintiffs would pay the mortgage. As a result, the plaintiffs' post-conveyance payments did not give rise to a resulting trust in their favor, even though they paid the carrying charges on the property because the defendant's income from the property was insufficient. See *Saulnier*, 328 Mass. at 240, 103 N.E.2d at 226. Similarly, the apparent inadequacy of Mrs. Lombardo's income and Mr. Lombardo's transfer of funds to her account, absent evidence of an agreement that Mr. Lombardo would pay the carrying charges, do not create a resulting trust in Mr. Lombardo's favor.[10]

Indeed, the Trustee has provided no evidence that the transfer of funds between the defendants occurs pursuant to even an implied agreement that Mrs. Lombardo would hold a portion of the property for Mr. Lombardo's benefit.[11] *But see Krasner v. Krasner*, 362 Mass. 186, 189, 285 N.E.2d 398, 400 (1972) (holding that a resulting trust arose in the plaintiff's favor, notwithstanding title being in the defendant's name, because the plaintiff's evidence showed that the parties had an implied understanding that the defendant would hold the property for the benefit of the plaintiff). Rather, the circumstantial evidence suggests an opposite conclusion. For example, Mr. Lombardo testified that Mrs. Lombardo identified the Edge Hill property and was primarily responsible for

9. With respect to these transfers, the defendants are entitled to invoke the marital gift presumption. *See In re Rauh*, 164 B.R. at 423 ("When a husband creates a joint account in his wife's name, there is no resulting trust of the wife's interest arising in the husband's favor. Because of the marital relationship, it is presumed the husband intended to make a gift, subject to the husband's (and wife's) withdrawal rights."); *Ross*, 2 Mass.App.Ct. at 511, 314 N.E.2d at 895 ("[The plaintiff] had the burden of proving that her contributions to the joint account were not a gift for the benefit of both spouses."). It also should be noted that the defendants maintain that they always have kept separate bank accounts. (# 18, Exh. 2 ¶ 7)

10. It is noted that the court in *Checovich v. Checovich* commented that "[w]hile nothing done after the completion of the purchase could effect [sic] the creation of a trust, the manner in which the transaction was subsequently treated by Peter and his father is significant of their understanding of its nature. Peter seems to have recognized his father's interest in the property by paying him rent and accepting payments for repair work in substantial amounts." *Checovich v. Checovich*, 339 Mass. 71, 74–75, 157 N.E.2d 643, 645 (1959) (internal citations omitted). In con-

trast, there is no evidence that Mrs. Lombardo has recognized Mr. Lombardo's interest; rather, she has treated the property as her own. For example, according to Mrs. Lombardo's 1990 will, her one hundred percent beneficial interest in the Edge Hill Trust will pass into the Vivien Keating–Lombardo Trust, under which Mr. Lombardo retains a life estate and her children are the remaindermen. (# 18, Exh. 2 ¶ 9)

11. Rather, the defendants maintain that at all times Mrs. Lombardo has claimed one hundred percent of the beneficial interest in both the Greenwich Park and Edge Hill properties. (# 18, Exh. 1 ¶ 6) ("When I transferred my interest in the Greenwich Park Property to my wife, I intended that my wife take a complete beneficial interest in that property. When the Edge Hill Trust purchased the Edge Hill Road Property, I also intended that my wife take and hold the complete beneficial interest in that property. She has held and retained the complete beneficial interest since that time."); (# 18, Exh. 2 ¶ 5) ("I have never had anything less than a complete beneficial interest in the Edge Hill Property ... Since the Greenwich Park Trust was established, I have never had any agreement with my husband that entitled him to any beneficial interest in our home.")

negotiating its purchase; Mr. Lombardo participated in the purchase decision to the extent he gave his engineering opinion of the soundness of the house. (# 18, Exh. 3, Deposition of Pio S. Lombardo, at 53–54) In addition, Mr. Lombardo testified that after he reviewed the purchase price at Mrs. Lombardo's request, he "indicated to her that it was going to strain her budget, but it was her decision." (*Id.* at 58)

Finally, in addition to failing to produce evidence sufficient to raise a genuine issue of material fact as to whether Mr. Lombardo contributed to the purchase price of the Edge Hill property, the Trustee has not identified the precise fractional interest Mr. Lombardo allegedly is entitled to claim. *See MacNeil,* 312 Mass. at 187, 43 N.E.2d at 670 (noting that the plaintiff husband was correct not to claim a fractional interest in the marital property, even though he paid the cash down payment and mortgage, because "there [was] no evidence to show that in consideration of his contribution toward the purchase price of the property he was to receive a determined and fixed fraction of the estate conveyed"); *Druker,* 308 Mass. at 230, 231, 31 N.E.2d at 525 (holding that plaintiff's payment of identifiable portion of purchase price was a general contribution that did not give rise to a resulting trust because parties intended that property should be held for the benefit of both in undefined proportions); *Karas,* 288 Mass. at 463, 193 N.E. at 19 (holding that no resulting trust arose in plaintiff's favor even though he paid most of the consideration for the conveyance because there was no finding that either he or his wife, the defendant, was to have a definite share in the property); *Pollock,* 223 Mass. at 384, 111 N.E. at 964.

The Trustee seems to imply that the value of Mr. Lombardo's interest is represented by the value of the two mortgages totaling $250,000 taken out on the Edge Hill property for the benefit of his business. According to the Trustee, the record

> "demonstrates that [Mr. Lombardo] contributed to the purchase of the Edge Hill Property at about the same time he negotiated and obtained collateral for his business loan in the $200,000 Green Mortgage I. Therefore, [Mr. Lombardo] intended to receive a determinate and fixed fraction of the whole estate conveyed to the Edge Hill Trust."

Chapter 7 Trustee's Memorandum # 22 at 11.

Based upon the law and the facts of the case, the Trustee's reliance on the second mortgages is misplaced.

In *Bartula v. Bartula,* a resulting trust did arise in the plaintiff's favor because there was evidence of an agreement to that effect. The court noted, however, that absent such an agreement, a resulting trust would not have arisen simply because the plaintiff cosigned a mortgage for construction of a house on the property five years *after* the purchase of the property. *See Bartula v. Bartula,* 6 Mass.App.Ct. 907, 908, 378 N.E.2d 466, 469 (1978). Similarly, Mr. Lombardo's signing of the Green mortgages, although not as far removed in time, is insufficient evidence to establish a resulting trust in his favor.

Further, the Trustee has presented no evidence indicating that Mrs. Lombardo's agreement to the Green mortgages violated the terms of the Edge Hill Trust. The Trustee acknowledges that the Edge Hill Trust is, in essence, a nominee trust.[12] (# 22 at 9, n. 5) ("The Chapter 7 Trustee acknowledges that the Edge Hill Trust, by

---

12. "The typical features of a nominee trust are: '(1) the names of the beneficiaries are filed with the trustees rather than being publicly disclosed; (2) a trustee may serve simultaneously as a beneficiary; (3) the trustees lack power to deal with the trust property except as directed by the beneficiaries; (4) a third party may rely on the disposition of trust property pursuant to any instrument signed by the trustees, without having to inquire as to whether the terms of the trust have been complied with; and (5) the beneficiaries may terminate the trust at any time, thereby receiving legal title to the trust property as tenants in common in proportion to their beneficial interests ... The third listed feature is the key to the nominee nature of the trust.'" *Roberts v. Roberts,* 419 Mass. 685, 688 n. 2, 646 N.E.2d 1061, 1063, n. 2 (1995) (quoting *In re Grand Jury Subpoena,* 973 F.2d 45, 48 (1st Cir.1992) (citing Birnbaum, *The Nominee Trust in Massachusetts Real Estate Practice,* 60 Mass. L.Q. 364, 364–65 (1976))).

its terms, contains the features of a nominee trust, particularly in that the trustees lack power to deal with the trust property except as directed by the beneficiary, in this case [Mrs. Lombardo].") Under the terms of the Edge Hill Trust, the trustees can act only "to the extent specifically directed by the beneficiaries." (# 18, Exh. 2B ¶ 4) Both of the defendants have affirmed that Mrs. Lombardo gave her full and voluntary consent to the use of the Edge Hill property as security for the Green mortgages. (# 18, Exh. 1, Affidavit of Pio S. Lombardo, ¶¶ 7, 8; # 18, Exh. 2, Affidavit of Vivien Keating Lombardo, ¶ 6) The Trustee's unsupported suggestion that Mrs. Lombardo's consent was not voluntary is insufficient to raise a genuine issue of material fact with respect to the voluntariness of her consent. (# 22 at 10) ("[I]f [Mrs. Lombardo] did not go along with [Mr. Lombardo's] risky business ventures, [Mr. Lombardo] could merely withhold his financial support, and without financing for his business, may have had no choice but to withhold such support.")

To summarize, the Trustee has presented no evidence to support either that Mr. Lombardo made a specific and identifiable cash contribution toward the purchase price at the time of the conveyance or that the defendants intended that any post-conveyance payments made by Mr. Lombardo constituted consideration for the conveyance. Even if the Trustee could identify Mr. Lombardo's cash contribution, no evidence has been adduced to intimate that this contribution was not general, but entitled him to a specific and defined interest in the Edge Hill property. In short, the Trustee has failed to proffer evidence sufficient to raise a genuine issue of material fact as to whether Mr. Lombardo is the beneficiary of a resulting trust with respect to the Edge Hill property.

### V. Conclusion

For all the reasons stated, it is ORDERED that the Defendants' Motion for Summary Judgment (# 17) be, and the same hereby is, ALLOWED. Judgment shall enter for the defendants.